Deval Zaveri, Esq. (SBN 213501)
Jimmy Tabb, Esq. (SBN 208188)
**ZAVERI TABB, APC**
402 West Broadway, Suite 1950
San Diego, CA 92101
Telephone: (619) 831-6988
Facsimile: (619) 239-7800
dev@zaveritabb.com
jimmy@zaveritabb.com

[Additional counsel on signature page]

*Counsel for Plaintiff and the Putative Class Members*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMILEY SCHOONOVER, individually and on behalf of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>IOVATE HEALTH SCIENCES U.S.A. INC., a Delaware corporation,<br><br>Defendant.<br>_____ | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>1. **Violation of State Consumer Protection Laws**<br>2. **Violation of California Consumer Legal Remedies Act, California Civil Code § 1750, *et seq.***<br>3. **Violation of California False Advertising Law, Business & Professions Code § 17500, *et seq.***<br>4. **Unjust Enrichment**<br><br>DEMAND FOR JURY TRIAL |

## CLASS ACTION COMPLAINT

Plaintiff Emiley Schoonover brings this Class Action Complaint against Defendant Iovate Health Sciences USA, Inc. ("Iovate" or "Defendant") to stop Defendant's distribution and sale of its Six Star Pre-Workout Explosion products that are falsely advertised and deceptively packaged and to seek redress for all those who have been harmed by Defendant's misconduct. Plaintiff alleges as follows based on personal knowledge as to herself and her own acts and experiences, and as to all other matters, on information and belief, including an investigation by her attorneys.

## NATURE OF THE CASE

1.    Defendant Iovate Health Sciences U.S.A. Inc. is one of the largest sellers of fitness and weight loss supplements in the country.

2.    Defendant's Six Star Pro Nutrition Pre-Workout Explosion products (the "Product" or "Products") are a popular line of pre-workout supplements sold by Defendant.

3.    Defendant's Six Star Pro Nutrition Pre-Workout Explosion Products are all packaged and sold in opaque containers that conceal from consumers the amount of powder actually contained therein.  The Product is advertised and sold in sealed, opaque plastic containers composed mostly of nonfunctional empty space, or slack-fill. The Product's sealed opaque packaging prevents the consumer from directly seeing or handling the pre-workout product, and amounts to not only wasteful packaging, but also and leads reasonable consumers to believe that the package contains significantly more pre-workout product than it actually does.

4.    Accordingly, Defendant's practice of substantially under-filling its Product's opaque container with powder creates nonfunctional slack-fill, in violation of state and federal laws. The use of nonfunctional slack-fill allows Defendant to lower its costs by deceiving customers into paying a higher price for more pre-workout product than they truly receive. As a result, Defendant has realized sizable

1 profits to the detriment of consumers.

2      5.    Defendant's deceptive packaging practices deceive, mislead, and harm

3 consumers. Consumers look at the dimensions of Defendant's container, rely on its

4 size, and are deceived in relation to the amount of contents contained within.

5      6.    Had Plaintiff and other consumers not been deceived by relying on the

6 size of the Product's container, they would not have purchased the Product or would

7 have paid less for the Product, as the container is substantially empty.

8      7.    Accordingly, Plaintiff Emiley Schoonover and other consumers have

9 suffered injury-in-fact as a result of Defendant's deceptive practices, including, but

10 not limited to, out-of-pocket costs incurred in purchasing the overvalued Product.

11      8.    As such, Plaintiff Emiley Schoonover, individually and on behalf of all

12 others similarly situated, brings this Class Action Complaint as a result of the

13 unlawful and deceptive actions of Defendant with respect to the deceptive

14 packaging and of its Product.

15 **JURISDICTION AND VENUE**

16      9.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332,

17 because this is a class action, as defined by 28 U.S.C. § 1332(d)(1)(B), in which a

18 member of the putative class is a citizen of a different state than Defendant, and the

19 amount in controversy exceeds the sum or value of $5,000,000, excluding interest and

20 costs. *See* 28 U.S.C. § 1332(d)(2).

21      10.    This Court has personal jurisdiction over Defendant because it

22 advertised, marketed, distributed and sold the Product at issue within the State of

23 California; Defendant engaged in the wrongdoing alleged in this Complaint in the

24 State of California; Defendant is authorized to do business in the State of California;

25 and Defendant has sufficient minimal contacts with the State of California, rendering

26 the exercise of jurisdiction by this Court permissible under traditional notions of fair

27 play and substantial justice. Moreover, Defendant is engaged in substantial

28 commercial activity within the State of California.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred within this judicial District; Defendant marketed and sold the Product at issue in this action in this District; and Defendant conducts business within this District. In addition, Plaintiff Schoonover purchased the Product in this District.

### PARTIES

12. Plaintiff is a resident of Seattle, Washington, and was a resident of Los Angeles County, California when she purchased one of Defendant's Products.

13. Defendant Iovate Health Sciences U.S.A. Inc. is a Delaware corporation, with its principal place of business located in Buffalo, New York. Defendant produces a variety of health supplement products, including the Product, sold throughout the United States, including in California.

### COMMON FACTUAL ALLEGATIONS

**I.  Both Federal and State Law Prohibit Nonfunctional Slack Fill**

14. Pursuant to California Business and Professions Code §12606(b):

A container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack-fill. Slack-fill is the difference between the actual capacity of a container and the volume of product contained therein. Nonfunctional slack-fill is the empty space in a package that is filled to substantially less than its capacity for reasons other than any one or more of the following:

(1) Protection of the contents of the package;

(2) The requirements of machines used for enclosing the contents of the package;

(3) Unavoidable product settling during shipping and handling;

(4) The need to utilize a larger than required package or container to provide adequate space for the legible presentation of mandatory and necessary labeling information, such as those based on the

---

1  regulations adopted by the United States Food and Drug

2  Administration or state or federal agencies under federal or state

3  law, laws or regulations adopted by foreign governments, or under

4  an industrywide voluntary labeling program;

5  (5)  The fact that the product consists of a commodity that is packaged

6  in a decorative or representational container where the container

7  is part of the presentation of the product and has value that is both

8  significant in proportion to the value of the product and

9  independent of its function to hold the product, such as a gift

10  combined with a container that is intended for further use after the

11  product is consumed, or durable commemorative or promotional

12  packages;

13  (6)  An inability to increase the level of fill or to further reduce the size

14  of the package, such as where some minimum package size is

15  necessary to accommodate required labeling, discourage pilfering,

16  facilitate handling, or accommodate tamper-resistant devices;

17  (7)  The product container bears a reasonable relationship to the actual

18  amount of product contained inside, and the dimensions of the

19  actual product container, the product, or the amount of product

20  therein is visible to the consumer at the point of sale, or where

21  obvious secondary use packaging is involved;

22  (8)  The dimensions of the product or immediate product container are

23  visible through the exterior packaging, or where the actual size of

24  the product or immediate product container is clearly and

25  conspicuously depicted on any side of the exterior packaging

26  excluding the bottom, accompanied by a clear and conspicuous

27  disclosure that the representation is the actual size of the product

28  or the immediate product container;

CLASS ACTION COMPLAINT                    5                    CASE NO.

(9)    The presence of any headspace within an immediate product container necessary to facilitate the mixing, adding, shaking, or dispensing of liquids or powders by consumers prior to use;

(10)    The exterior packaging contains a product delivery or dosing device if the device is visible, or a clear and conspicuous depiction of the device appears on the exterior packaging, or it is readily apparent from the conspicuous exterior disclosures or the nature and name of the product that a delivery or dosing device is contained in the package;

(11)    The exterior packaging or immediate product container is a kit that consists of a system, or multiple components, designed to produce a particular result that is not dependent upon the quantity of the contents, if the purpose of the kit is clearly and conspicuously disclosed on the exterior packaging;

(12)    The exterior packaging of the product is routinely displayed using tester units or demonstrations to consumers in retail stores, so that the customers can see actual, immediate container of the product being sold, or a depiction of the actual size thereof prior to purchase;

(13)    The exterior packaging consists of single or multiunit presentation boxes of holiday or gift packages if the purchaser can adequately determine the quantity and sizes of the immediate product container at the point of sale;

(14)    The exterior packaging is for a combination of one purchased product, together with a free sample or gift, wherein the exterior packaging is necessarily larger than it would otherwise be due to the inclusion of the sample or gift, if the presence of both products and the quantity of each product are clearly and conspicuously

disclosed on the exterior packaging;

(15)  The exterior packaging or immediate product container encloses computer hardware or software designed to serve a particular computer function, if the particular computer function to be performed by the computer hardware or software is clearly and conspicuously disclosed on the exterior packaging.

15.    Further, the Federal Food, Drug, and Cosmetic Act (the "FDCA") prohibits the introduction of food products into interstate commerce that are misbranded. *See* 21 U.S.C. § 331(a). Relevant here, "a food shall be deemed to be misbranded if its container is so made, formed, or filled as to be misleading." 21 C.F.R § 100.100. Pursuant to 21 C.F.R. § 100.100(a):

A container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack-fill. Slack-fill is the difference between the actual capacity of a container and the volume of product contained therein. Nonfunctional slack-fill is the empty space in a package that is filled to less than its capacity for reasons other than:

(1)  Protection of the contents of the package;

(2)  The requirements of the machines used for enclosing the contents in such package;

(3)  Unavoidable product settling during shipping and handling;

(4)  The need for the package to perform a specific function (e.g., where packaging plays a role in the preparation or consumption of a food), where such function is inherent to the nature of the food and is clearly communicated to consumer;

(5)  The fact that the product consists of a food packaged in a reusable container where the container is part of the presentation of the food and has value which is both significant in proportion to the value of the product and independent of its function to hold the food, e.g. a gift

product consisting of a food or foods combined with a container that is intended for further use after the food is consumed; or durable commemorative or promotional packages; or

(6)    Inability to increase level of fill or to further reduce the size of the package (e.g., where some minimum package size is necessary to accommodate required food labeling (excluding any vignettes or other nonmandatory designs or label information), discourage pilfering, facilitate handling, or accommodate tamper-resistant devices).

16.    Defendant's Product's packaging meets the definitions of nonfunctional slack-fill under both California and federal law.

## I.    Defendant's Six Star Pro Nutrition Pre-Workout Explosion Product Contains Nonfunctional Slack-fill

17.    Defendant packages its Six Star Pro Nutrition Pre-Workout Explosion Product in sealed non-transparent, or opaque, containers that do not allow consumers to view the contents inside. Therefore, the packaging "does not allow the consumer to fully view its contents." 21 C.F.R. § 100.100(a):

 

18.     The Product's container stands at approximately 5 ¼ inches vertically, with a diameter of approximately 4 inches. The container is filled with pre-workout powder approximately 1 ¾ inches from the base of the container. Measuring from the base of the container up to its lid, approximately 66.6% of the container is comprised of empty space, or slack-fill:

 

19.     Slack-fill is the difference between the actual capacity of a container and the volume of product contained therein.

20.     As set out in 21 C.F.R. 100.100, nonfunctional slack-fill is defined as the empty space in a package that is filled to substantially less than its capacity for reasons other than one of six enumerated safe harbor provisions. Defendant's Product contains approximately 66.6% of empty space which is substantially less than its capacity.

21.     At bottom, the packaging does not fit within any safe harbor.   For example:

(1)     the slack fill does not protect the contents of the packaging, as the product is not fragile because it is a fine powder;

(2)     Defendant's machines are used to produce several different sizes of containers, therefore, there is no reason that machines used for

enclosing the contents of the package would require such a disproportionately sized container;

(3)   the slack-fill is not necessary to accommodate product settling, as fine powders do not settle to an extent that requires 66.6% of the container be empty;

(4)   the packaging does not perform a specific function other than housing the powder;

(5)   the packaging does not have "value which is significant in proportion to the value of the product" independent of housing the product, nor is the container used as part of the presentation of the product; and

(6)   the container does not need to be significantly larger than its fill to accommodate necessary labeling information, as there are several sized containers available for the Six Star Pro Nutrition Brand, as well as comparable products in various smaller containers produced by competitors.

22.    The container contains a serving scoop and bags labeled "Pillow Pak." The excessive amount of slack-fill is not necessary for these two objects to fit within the container. Defendant could substantially fill the container, or use a smaller container, and still be able to fit the serving scoop along with the separate "Pillow Pak" bags.

23.    Other than housing the pre-workout powder, the serving scoop, and Pillow Paks, the container serves no other purpose. The substantial amount of slack-fill is nonfunctional, and there is no valid reason for selling a container comprising approximately 66.6% nonfunctional slack-fill other than to mislead the consumer.

24.    On information and belief, Defendant is selling and will continue to sell its Product using deceptive, misleading, and misbranded containers.

**II.    Consumers Relied on Defendant's Deceptive Container and Were Injured as a Result**

25.    Consumers considered and relied on a variety of factors when deciding to purchase Defendant's Product, including the dimensions and size of the container.

26.    Consumers were unaware that Defendant's Product contained nonfunctional slack-fill because of the opaque nature of the container and the representations made by Defendant concerning the dimensions and size of the container.

27.    Such representations made by Defendant are deceptive in relation to how much pre-workout powder is actually housed within the container. Reasonable consumers normally rely on representations made on, or by, product containers and attach importance to whether the product is misbranded, such as containing nonfunctional slack-fill.

28.    Based on the size of the Product's container, a reasonable consumer would expect the pre-workout powder to be filled closer to the container's capacity. However, the majority of the container consists of nonfunctional slack-fill.

29.    On information and belief, consumers are detrimentally relying on Defendant's representations when making purchasing decisions and are being misled by the substantial amount of nonfunctional slack-fill.

30.    Consumers who purchased the Product did not have a reasonable opportunity to view the quantity of the contents contained within the Product's packaging.

31.    The information that Defendant provides about the quantity of contents within the container on the package labeling, such as the net weight or serving disclosures, does not enable a consumer to form a meaningful understanding about the quantity of contents contained within the container in comparison to the size of the container itself.

32.    Prior to the point of sale, or the consumer opening the Product, the packaging prevents visual or audial confirmation of the contents of the Product.

33. The opaque packaging prevents a consumer from observing the contents before opening. Shaking the Product before a purchasing decision would still make it impossible for a consumer to discern the presence of any nonfunctional slack-fill and would not educate a consumer to the extent to which they are not misled.

34. This conduct by Defendant threatens consumers, as well as competing companies who do not participate in such unlawful practices, by using intentionally deceptive and misleading containers that reduce consumer choice.

35. Plaintiff and other consumers have paid an unlawful premium for Defendant's Product. If Plaintiff and consumers knew that Defendant significantly underfilled the containers, Plaintiff and consumers would not have purchased Defendant's Product or would have paid less for them. Therefore, Plaintiff and other consumers purchasing Defendant's Product suffered injury in fact and lost money as a result of Defendant's false, unfair, and fraudulent practices.

36. As a result of their reliance on Defendant's representations, consumers have suffered an ascertainable loss of money, including, but not limited to, out of pocket costs incurred in purchasing Defendant's Product where they would have either not purchased Defendant's Product, or paid significantly less had they known the container contained 66.6% nonfunctional slack-fill.

37. As a result, Defendant should be enjoined from using this deceptive packaging, and should be required to pay for all harm caused to Plaintiff and Class Members.

## **FACTS SPECIFIC TO PLAINTIFF**

38. Plaintiff Emiley Schoonover purchased Defendant's Product on or about January 9, 2019, at a Walgreens store located at 230 North La Brea Avenue in Inglewood, California.

39. Specifically, Plaintiff purchased Defendant's Six Star Pro Nutrition Pre-Workout Explosion "Ripped" Product (pictured above). "Ripped" is one of Defendant's Products in its line of Explosion pre-workout supplements that are all

packaged and sold in the same opaque containers containing nonfunctional slack-fill. These two Products in Defendant's powder line of Explosion pre-workout supplements contain substantially the same ingredients and identical amounts of several active ingredients, such as Vitamin C, Niacin, Beta-alanine, L-arginine alpha-ketoglutarate, taurine, L-citruline, L-citruline malate, L-arginine hydrochloride, caffeine anhydrous, choline bitartrate, and L-tyrosine, per serving.

40.    Plaintiff paid approximately $15.99 for the Product.

41.    The Product was positioned at the Walgreens in a section of the store with other similar products.

42.    Plaintiff visually compared Defendant's Product with several other pre-workout products for sale at Walgreens before purchasing the Product. Due to the opaque nature of the Product's packaging, Plaintiff could not inspect or determine the amount of pre-workout powder contained in the package.

43.    As such, Plaintiff relied on the dimensions of the Product's container in order to discern the quantity of pre-workout powder contained within the container. Plaintiff had no reason to believe that the container was not entirely full, or at least substantially full, of pre-workout powder.

44.    Relying on Defendant's deceptive packaging, Plaintiff decided to purchase Defendant's Product rather than similar products produced by Defendant's competitors also for sale at Walgreens.

45.    After purchasing Defendant's Product and opening its container, Plaintiff discovered that the Product's container consisted of mostly nonfunctional slack-fill, and filled only to approximately one-third of the container's capacity.

46.    Had Plaintiff known of the substantial amount of nonfunctional slack-fill existing in Defendant's Product container, she would not have purchased the Product or would have paid less for it.

47.    Although Plaintiff would like to purchase another of Defendant's Products in the future, Plaintiff is unable to discern whether a substantial amount of

nonfunctional slack-fill would be present, as she is unable to rely on Defendant's packaging as an indication of the container's contents. Plaintiff would purchase Defendant's Product in the future if the packaging was no longer misleading and deceptive such that she could determine, prior to purchase, the level to which the containers are actually filled as opposed to being substantially empty space.

48.     As a result of Defendant's deceptive and misleading packaging, Plaintiff was injured.

## **CLASS ALLEGATIONS**

49.     Plaintiff brings this action on her own behalf and on behalf of a nationwide class (the "Class") and subclasses (the "Subclasses"), collectively the "Classes," defined as follows:

(i)     **The Class**: All persons who, within the applicable statute of limitations, purchased Defendant's Product in the United States.

(ii)    **The California Subclass**: All persons in the United States who, within the applicable statute of limitations, purchased Defendant's Product in California.

(iii)   **CLRA Subclass**: All members of the California Subclass who are "consumers" within the meaning of California Civil Code § 1761(d).

50.     Members of the Classes will be referred to as "Class Members."

51.     Plaintiff will fairly and adequately represent and protect the interests of the other Class Members. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the other Class Members, and have the financial resources to do so. Neither Plaintiff nor her counsel have any interest adverse to those of the other members of the Classes.

52.     Absent a class action, most Class Members would find the cost of litigating their claims to be prohibitive and would have no effective remedy. The class treatment of common questions of law and fact is superior to multiple individual

actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

53.     Defendant has acted and failed to act on grounds generally applicable to the Plaintiff and the Class Members, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members, and making injunctive or corresponding declaratory relief appropriate for the Classes as a whole.

54.     The factual and legal bases of Defendant's liability to Plaintiff and to the other Class Members are the same, resulting in injury to the Plaintiff and to all of the other members of the Classes. Plaintiff and the other members of the Classes have suffered harm and economic loss as a result of Defendant's unlawful and wrongful conduct.

55.     Upon information and belief, there are hundreds, if not thousands, of Class Members such that joinder of all members is impracticable.

56.     There are many questions of law and fact common to the claims of Plaintiff and the other Class Members, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not limited to, the following:

(a)     Whether Defendant labeled, packaged, marketed, advertised, and/or sold its Product to Plaintiff, and those similarly situated, using false, misleading and/or deceptive packaging;

(b)     Whether Defendant's conduct constitutes an unfair method of competition or unfair or deceptive act or practice;

(c)     Whether Defendant misrepresented that the Product's packaging complied with federal and California slack-fill regulations and statutes;

(d)     Whether Defendant used deceptive representations in connection with the sale of the Product;

(e)     Whether Defendant's conduct violates federal and/or state consumer protection laws;

(f)     Whether Defendant's packaging is misleading;

(g)     Whether Defendant knew or reasonably should have known that the Product's packaging was and is deceptive;

(h)     Whether Plaintiff and Class Members are entitled to equitable relief, including an injunction;

(i)     Whether Plaintiff and Class Members have sustained harm and loss as a result of Defendant's wrongful conduct;

(j)     The appropriate measure of relief; and

(k)     Whether Defendant should be enjoined from continuing its unlawful practices.

## COUNT ONE
**Violations of State Consumer Protection Laws**
**(on behalf of Plaintiff and the Classes)**

63.     Plaintiff hereby incorporates the above allegations by reference as though fully set forth herein.

64.     California's Unfair Competition Law, Business & Professions Code, § 17200, *et seq.* ("UCL"), as well as other materially identical consumer fraud statutes enacted by states throughout the country, prohibit deceptive acts and practices in the sale of consumer products, such as Defendant's Product.

65.     Plaintiff brings this claim individually and behalf of all other persons similarly situated pursuant to the UCL as well as other states' consumer fraud statutes.

66.     Plaintiff seeks to represent a Class consisting of all persons who purchased Defendant's Product in the United States for personal use and not for resale during the applicable statute of limitations.

67.     Class Members are not sophisticated experts with independent knowledge of corporate branding, labeling and packaging practices.

68.     California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair, or fraudulent business act or practice"

and "unfair, deceptive, untrue or misleading advertising."

69. Under the UCL, a business act or practice is "unlawful" if it violates any established state or federal law.

70. Defendant's false and misleading advertising of its Product therefore is "unlawful" because it contains unlawful nonfunctional slack-fill in violation of 21 C.F.R. § 100.100 and in violation of California Business & Professions Code § 12606.

71. Further, Defendant's acts constituted violations of California's Consumer Legal Remedies Act, as explained in further detail below; and violations of California's False Advertising Law.

72. By its conduct, Defendant has engaged in unfair competition and unlawful, unfair, and fraudulent business practices.

73. Defendant's Product is packaged in opaque containers that do not allow the consumer to view the pre-workout powder contained. The nature of the container deceives the consumer and does not allow a consumer to view the presence of nonfunctional slack-fill in the container prior to purchasing and opening the Product.

74. The combination of an opaque container and the presence of nonfunctional slack-fill is unfair to the consumer because it does not allow them to make a purchase decision that is not influenced by Defendant's misrepresentation.

75. Defendant's Product contains nonfunctional slack-fill for which the difference between the actual capacity of its Product's container and the volume of the pre-workout product contained within does not exist for any valid reasoning other than to mislead the customer.

76. Defendant's Product is composed of approximately 66.6% nonfunctional slack-fill, which is substantially less than its capacity.

77. Defendant's packaging of the Product is deceptive, misleading, and unfair to the consumer.

78. Defendant's Product packaging was a material factor in Plaintiff's and Class Members' decision to purchase its Product. Plaintiff and Class Members

reasonably relied on Defendant's Product packaging, specifically concerning the dimensions and size of the container, and were led to believe that they were getting more pre-workout product than they received commensurate with the size of the container.

79.    Plaintiff and Class Members have suffered injury in fact and lost money as a result of purchasing Defendant's deceptively packaged product. They paid for the pre-workout powder they otherwise would not have purchased, or would have paid materially less for, had they known Defendant's Product would contain a substantial amount of nonfunctional slack-fill.

80.    As a direct and proximate result of Defendant's unlawful, unfair, and fraudulent practices described above, Plaintiff and other Class members have suffered economic loss, including the purchase price they paid for Defendant's Products. Defendant has been unjustly enriched and should be required to make restitution to Plaintiff and the Class members pursuant to §§ 17203 and 17204 of the Business and Professions Code.

## COUNT TWO
**Violation of California's Consumer Legal Remedies Act,
California Civil Code § 1750, *et seq*.
(on behalf of Plaintiff and the CLRA Subclass)**

81.    Plaintiff hereby incorporates the above allegations by reference as though fully set forth herein.

82.    Plaintiff brings this claim individually and on behalf of members of the CLRA Subclass pursuant to the Consumers Legal Remedies Act ("CLRA"), Civil Code Section 1750, *et seq*.

83.    Defendant is a "person" as defined by California Civil Code § 1761(c).

84.    Plaintiff and CLRA Subclass members are "consumers" withing the meaning of California Civil Code § 1761(d) because they bought Defendant's Product for personal, family, or household purposes.

85.    Plaintiff and CLRA Subclass members are not sophisticated experts with independent knowledge of corporate branding, labeling and packaging practices.

86.    Defendant violated federal and California law because its Product is intentionally packaged in a way that prevents the consumer from being able to fully see its contents, as well as being made, formed, or filled as to be misleading and containing nonfunctional slack-fill.

87.    The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices" in connection with the sale of goods.

88.    Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have … quantities that they do not have …," and California Civil Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised."

89.    Defendant's conduct constitutes unfair methods of competition and unfair or deceptive acts or practices, through representations made by the Product's packaging, in that the nonfunctional slack-fill misrepresents that the Product has quantities it does not have, and Defendant does not intend to sell the larger quantity that is misrepresented as a result of the nonfunctional slack-fill.

90.    Accordingly, Defendant has violated Sections 1770(a)(5) and (a)(9) of the CLRA.

91.    Defendant's packaging, advertising, and sale of the Product were intended to result in the sale of the Product to consumers and violated the CLRA by misrepresenting compliance with 21 C.F.R. § 100.100.

92.    Defendant deceived the CLRA Subclass by representing that the Product's packaging, which is composed of approximately 66.6% nonfunctional slack-fill, actually conforms with federal and California slack-fill regulations and statutes including 21 C.F.R. § 100.100.

93.    Defendant deceived the CLRA Subclass by representing that the Product was in compliance with an accurate representation as to the quantity of pre-workout

powder contained within the container. Defendant used deceptive packaging in order to misrepresent the quantity of pre-workout product within the container and give the reasonable expectation that the quantity of pre-workout powder contained therein was commensurate with the size of the container. As a result, Defendant intentionally misrepresented and concealed material facts in regard to consumer's purchasing decision. This misrepresentation was done intentionally to deceive the consumer and deprive them of their legal rights and money.

94.    Plaintiff and CLRA Subclass members relied on the misrepresentations made by Defendant though its deceptive packaging of its Product.

95.    Defendant knew or should have known that its Product's packaging was misleading.

96.    As a direct and proximate result, Plaintiff and CLRA Subclass members have suffered injury in fact and have lost money as a result of Defendant's unfair, unlawful, and fraudulent conduct where they would not have purchased the Product had they known the containers contained a substantial amount of nonfunctional slack-fill.

97.    Pursuant to California Civil Code § 1782(d), under this Count, Plaintiff and the CLRA Subclass seek a Court order enjoining the above-described wrongful acts and practices of Defendant, while reserving the right to later amend this Count, as appropriate, to add a request for actual damages, punitive damages, statutory damages, and/or other monetary relief.

## COUNT THREE
**Violation of California Business & Professions Code § 17500, *et seq.***
**(on behalf of Plaintiff and the California Subclass)**

98.    Plaintiff hereby incorporates the above allegations by reference as though fully set forth herein.

99.    Plaintiff brings this cause of action on behalf of herself and on behalf of the California Subclass.

100.    As a result of their reliance on Defendant's misrepresentations and

---

CLASS ACTION COMPLAINT                    20

CASE NO.

omissions, Plaintiff and the California Subclass Members suffered an ascertainable loss of money, property, and/or value of their purchase.

101.   California Business & Professions code § 17500 prohibits unfair, deceptive, untrue, and misleading advertising in connection with the disposal of personal property, including, without limitations, false statements as to the use, worth, benefits, or characteristics of the property.

102.   Defendant's Product is packaged in opaque containers that do not allow the consumer to view the pre-workout powder contained. The nature of the container does not allow a consumer to view the presence of slack-fill in the container prior to purchasing and opening the Product.

103.   Defendant's Product contains nonfunctional slack-fill for which the difference between the actual capacity of its Product's container and the volume of the pre-workout product contained within does not exist for any valid reasoning other than to mislead the customer.

104.   Defendant's Product is composed of approximately 66.6% slack-fill which is substantially less than its capacity.

105.   Therefore, Defendant has represented, and continues to represent to the public, including Plaintiff and the California Subclass Members, through its deceptive packaging, that more pre-workout product is contained within its Product than is actually contained.

106.   Defendant's packaging of its Products is deceptive, misleading, and unfair to the consumer, because the packaging does not allow the consumer to view the package's contents but rather contains nonfunctional slack-fill, in violation of California Business & Professions Code § 12606.

107.   Defendant knew, or should have known, that these representations were misleading and deceptive, and that such representations continue to be misleading.

108.   Defendant has been unjustly enriched and should be required to make restitution to Plaintiff and the Class Members. Pursuant to § 17535 of the Business &

Professions Code, Plaintiff and Class Members are entitled to an order of this Court enjoining such future conduct on the part of Defendant, and such other orders and judgements which may be necessary to disgorge Defendant's unjust gains and restore any money paid for Defendant's Product as a result of Defendant's wrongful conduct.

## COUNT FOUR
### Unjust Enrichment
### (on behalf of Plaintiff and the Classes)

109.   Plaintiff hereby incorporates the above allegations by reference as though fully set forth herein

110.   Plaintiff brings this cause of action on behalf of herself and on behalf of the Classes.

111.   As a direct and proximate result of Defendant's misrepresentations, Defendant has profited through its sale of Product. Regardless of whether its Product was purchased via an agent, or Defendant directly, the money from the Product's sales flows directly back to Defendant.

112.   Defendant has therefore been unjustly enriched.

113.   Plaintiff and Class Members have been injured as a result of Defendant's deceptive business practices in advertising, marketing, and selling its Product through the use of funds that earned interest or otherwise added to Defendant's profits when said money should have remained with Plaintiff and Class Members.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the Classes, prays for the following relief:

1.   An order certifying the Classes as defined above;

2.   For all forms of relief set forth above;

3.   Restitution and/or disgorgement from Defendant in an amount to be determined at trial;

4.   An order enjoining Defendant from continuing to engage in the unlawful conduct and practices described herein;

5.    An award of attorneys' fees and costs; and

6.    Such further and other relief the Court deems reasonable and just.

## **JURY DEMAND**

Plaintiff requests trial by jury of all claims that can be so tried.

DATED: February 13, 2020          Respectfully submitted,

EMILEY SCHOONOVER, individually and on behalf of similarly situated individuals

By: /s/ *Deval R. Zaveri*

Deval Zaveri, Esq. (SBN 213501)
Jimmy Tabb, Esq. (SBN 208188)
ZAVERI TABB, APC
402 West Broadway, Suite 1950
San Diego, California 92101
dev@zaveritabb.com
jimmy@zaveritabb.com

Timothy P. Kingsbury
(*pro hac vice* to be filed)
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, Illinois 60601
tkingsbury@mcgpc.com

*Counsel for Plaintiff and the Putative Class*

## DECLARATON OF PLAINTIFF EMILEY SCHOONOVER

I, Emiley Schoonover, declare as follows:

1.      I am the Plaintiff in the above-captioned action. I make this declaration pursuant to California Civil Code Section 1780(d). I make this declaration based upon my personal knowledge and, if called upon to do so, could and would testify competently thereto.

2.      I purchased Defendant's Product at a Walgreens store located at 230 North La Brea Ave., Inglewood, CA, within the Central District of California.

3.      I am aware that Defendant is a Delaware corporation registered to do business in California with its principal place of business in Buffalo, New York.

4.      I declare under penalty of perjury under the laws of the United States and the State of California this 6th day of February 2020 in Seattle, Washington that the foregoing is true and correct.

/s/
Emiley Schoonover