Eugene Y. Turin (*pro hac vice*)
McGuire Law, P.C.
55 W. Wacker Dr., 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002, ex. 3
eturin@mcgpc.com

*Counsel for Plaintiff and Proposed Class Counsel*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMILEY SCHOONOVER, individually and on behalf of similarly situated individuals,<br><br><br>Plaintiff,<br><br>v.<br><br><br>IOVATE HEALTH SCIENCES U.S.A. INC., a Delaware corporation,<br><br><br>Defendant. | Case No. 2:20-cv-01487-FLA-AGRx<br><br>REDACTED<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date: February 18, 2022<br>Hearing Time: 1:30 p.m.<br>Location: Via Zoom Videoconference<br><br>Honorable Fernando L. Aenlle-Rocha<br><br>Complaint Filed: February 13, 2020<br>Trial Date: April 19, 2022 |

NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 18, 2022, at 1:30 p.m., or as soon as this matter may be heard in the above-entitled court, before the Honorable Fernando L. Aenlle-Rocha, United States District Judge of the Central District of California via remote videoconference, Plaintiff Emiley Schoonover will, and hereby does, move for an order certifying this action as a class action against Defendant, Iovate Health Sciences, Inc. ("Iovate") and finding that:

1.    The prerequisites and requirements for certification of a class action under Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure have been satisfied on the following bases:

    a.    The number of Class members is so numerous that joinder of all members thereof is impracticable;

    b.    That there are questions of law and fact common to the Class members;

    c.    The claims of the Class Representative are typical of the claims of the Class members she seeks to represent;

    d.    The Class Representative will fairly and adequately represent the interests of the Class members she seeks to represent;

    e.    The question of law and fact common to the Class members predominate over any questions affecting only individual Class members;

    f.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy;

    g.    The law firm of McGuire Law, P.C. will fairly and adequately represent the interests of the Class.

2.      That the following Class is certified by the Court:

All persons who, on or after February 13, 2017, purchased in the state of California for household use and not for resale or distribution any of Defendant's Six Star Pre-Workout Explosion and Defendant's Six Star Pre-Workout Explosion Ripped products in a 32 ounce or 20 ounce container.

3.      That governmental entities, Iovate, and its affiliates, subsidiaries, employees, current and former officers, directors, agents, and representatives, and the members of this Court and its staff are excluded from the Class;

4.      That McGuire Law, P.C. is appointed Class Counsel for the aforementioned Class; and

5.      That the Court will direct the form of notice to the Class pursuant to Federal Rule of Civil Procedure 23(c)(2) by separate Order.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the accompanying Declarations of Eugene Y. Turin, Glenn May, Thomas J. Maronick, and all exhibits thereto, and all relevant pleadings, evidence, and arguments offered in support of the Motion.

Pursuant to Civil Local Rule 7-3, this motion was filed following numerous conversations with counsel for Defendant regarding the appropriateness of class certification, including a formal meet-and-confer that took place telephonically on December 17, 2021 during which Plaintiff explained the basis for this Motion and Defendant's counsel stated that they planned to oppose the Motion.

DATED: December 24, 2021

Respectfully submitted,

EMILEY SCHOONOVER, individually and on behalf of similarly situated individuals

By: /s/ *Eugene Y. Turin*

Eugene Y. Turin (*pro hac vice*)
McGuire Law, P.C.
55 W. Wacker Dr., 9th Fl.
Chicago, IL 60601
eturin@mcgpc.com

*Counsel for Plaintiff and Proposed Class Counsel*

I.      INTRODUCTION ........................................................................................1

II.     SUMMARY STATEMENT OF FACTS .....................................................4

        A.      Defendant's Pre-Workout Products Were Uniformly
                Deceptive ........................................................................................4

        B.      Plaintiff Purchased Defendant's 32 Oz. Pre-Workout Product In
                Reliance On Its Product Packaging ..................................................8

III.    THE PROPOSED CLASS ..........................................................................8

IV.     ARGUMENT...............................................................................................9

        A.      Legal Standard .................................................................................9

        B.      The Requirements of Rule 23(a) are Satisfied .................................9

                1.      Numerosity ............................................................................9

                2.      Commonality .......................................................................10

                3.      Typicality .............................................................................12

                4.      Adequacy..............................................................................13

                5.      Ascertainability ...................................................................15

        C.      The Requirements of Rule 23(b)(3) are Satisfied ..........................17

                1.      Predominance .......................................................................17

                2.      Superiority...........................................................................23

V.      CONCLUSION .........................................................................................24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

*Amgen v. Conn. Ret. Plans & Trust*,
   568 U.S. 455 (2013) .................................................................................9

*Astiana v. Kashi Co.*,
   291 F.R.D. 493 (S.D. Cal. 2013) ....................................11, 13–15, 19, 21, 23–24

*Briseno v. ConAgra Foods, Inc.*,
   844 F.3d 1121 (9th Cir. 2017) ............................................... 15-17, 24

*Brown v. Hain Celestial Grp., Inc.*,
   No. 11-cv-03082, 2014 WL 6483216 (N.D. Cal. 2014.)........11–13, 15–16, 18, 22

*Cartwright v. Viking Industries, Inc.*,
   No. 07-cv-02159, 2009 WL 2982882 (E.D. Cal. 2009) ................................22–23

*Chavez v. Blue Sky Nat. Beverage Co.*,
   268 F.R.D. 365 (N.D. Cal. 2010)..........................................13, 18, 21

*Comcast Corp. v. Behrend*,
   133 S. Ct. 1426 (2013)...........................................................3, 9, 22

*Edwards v. City of Long Beach*,
   467 F. Supp. 2d 986 (C.D. Cal. 2006) ..................................................23

*Farar v. Bayer AG*,
   No. 14-cv-04601, 2017 WL 5952876 (N.D. Cal. 2017 .......................................24

*Forcellati v. Hyland's Inc.*,
   No. 12-cv-1983, 2014 WL 1410264 (C.D. Cal. 2014)........................................18

*Guido v. L'Oreal, USA, Inc.*,
   284 F.R.D. 468 (C.D. Cal. 2012).........................................2–3, 13–14

*Hadley v. Kellogg Sales Co.*,
   324 F. Supp. 3d 1084 (N.D. Cal. 2018).............................................3, 9

*Hale v. State Farm Mut. Auto. Ins. Co.*,
   No. 12-cv-0660, 2016 WL 4992504 (S.D. Ill. 2016) ..........................................10

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ............................................................10–12, 14, 18

*In re ConAgra Foods, Inc.*,
    90 F. Supp. 3d 919 (C.D. Cal. 2015) ........................................3, 10–12, 18, 23–24

*In re Steroid Hormone Prod. Cases*,
    181 Cal. App. 4th 145 (2010) .................................................................................18

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009) ............................................................................................18

*Jordan v. County of Los Angeles*,
    669 F.2d 1311 (9th Cir. 1982) ................................................................................10

*Krommenhock v. Post Foods, LLC*,
    334 F.R.D. 552 (N.D. Cal. 2020)...............................................11, 19, 21–22, 24

*Lauriedale Assocs., Ltd. v. Wilson*,
    7 Cal. App. 4th 1439 (1st Dist. 1992)...................................................................23

*Leyva v. Medline Industries, Inc.*,
    716 F.3d 510 (9th Cir. 2013) ..................................................................................22

*Lilly v. Jamba Juice Co.*,
    No. 13-cv-02998, 2014 WL 4652283, at *4 (N.D. Cal. 2014)............................15

*Mazza v. Am. Honda Motor Co., Inc.*,
    666 F.3d 581 (9th Cir. 2012) ...................................................................................9

*McCrary v. Elations Co., LLC*,
    No. 13-cv-00242, 2014 WL 1779243 (C.D. Cal. 2014).........12–16, 19, 21–22, 24

*Ries v. Arizona Beverages USA LLC*,
    287 F.R.D. 523 (N.D. Cal. 2012)............................................................................16

*Twegbe v. Pharmaca Integrative Pharmacy, Inc.*,
    No. 12-cv-5080, 2013 WL 3802807 (N.D. Cal. July 17, 2013)......................9–10

*Valentino v. Carter-Wallace, Inc.*,
    97 F.3d 1227 (9th Cir. 1996) ..................................................................................23

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011 ...................................................................................9–10

*Wolin v. Jaguar Land Rover North America, LLC,*
    617 F.3d 1168 (9th Cir. 2010) ...........................................................13

*Wolph v. Acer Am. Corp.,*
    272 F.R.D. 477 (N.D. Cal. 2011)........................................................15

*Zinser v. Accufix Research Institute, Inc.*,
    253 F.3d 1180 (9th Cir. 2001) ............................................................24

**<u>Statutes</u>:**

21 C.F.R. § 100.100 ............................................................................6, 19

California Business & Professions Code § 12606(b) ............................6, 19

Consumer Legal Remedies Act,
    California Civil Code § 1750, *et seq.* .......................................................2

False Advertising Law,
    California Business & Professions Code § 17500, *et seq.* ......................2

Fed. R. Civ. P. 23(a)................................................................2, 4, 9–13, 15, 18

Fed. R. Civ. P. 23(b) ............................................................2, 4, 9, 17, 23

Unfair Competition Law,
    California Business & Professions Code, §17200, *et seq.* ......................1

1

## **MEMORANDUM OF POINTS & AUTHORITIES**

2

## **I.    INTRODUCTION**

3           Defendant Iovate Health Sciences U.S.A., Inc. ("Defendant" or "Iovate")

4    sells millions of dollars of its "Six Star Pre-Workout Explosion" powdered

5    supplement products (the "Pre-Workout Products") to thousands of consumers

6    throughout California. As alleged by Plaintiff, and borne out by fact and expert

7    discovery, Defendant's Pre-Workout Products are packaged in over-sized

8    containers that are severely underfilled, with as much as ***two-third's*** of the

9    containers being empty. Critically, Defendant uses an opaque plastic container for

10   its Pre-Workout Products that does not provide consumers any ability to view their

11   contents and determine how much powdered product they are actually getting in

12   their purchase. The unused empty space in Defendant's Pre-Workout Products is

13   termed "slack-fill," and under California and Federal regulations nonfunctional

14   slack-fill that does not serve any purpose is prohibited and considered a deceptive

15   practice as it misrepresents to consumers the amount of product that they are

16   purchasing. Accordingly, the ultimate common and predominant question in this

17   case is whether the packaging for Defendant's Pre-Workout Products is deceptive,

18   misleading, and/or unfair because the Pre-Workout Products contain excessive

19   nonfunctional slack-fill.

20           Plaintiff was an ordinary consumer who purchased one of Defendant's Pre-

21   Workout Products in California based on the size of the product packaging and the

22   amount of product that she thought would be contained inside. However, Plaintiff

23   was deceived and misled by Defendant's product packaging because the Pre-

24   Workout Product she purchased was actually almost 66% empty and Plaintiff did

25   not get the amount of product that she thought she had paid for. Plaintiff asserts

26   causes of action under California's consumer protection statutes (Unfair

27   Competition Law, Business & Professions Code, §17200, *et seq.* ("UCL");

28

Consumers Legal Remedies Act ("CLRA"), Civil Code Section 1750, *et seq*.; California Business & Professions code § 17500) and for unjust enrichment. While Defendant challenged Plaintiff's claims on the merits in its Motion to Dismiss (Dkt. No. 15), the Court denied Defendant's motion in its entirety and found that Plaintiff had "adequately alleged that a reasonable consumer is likely to be misled by the Products' packaging[.]" (Dkt. No. 25, at 3.) Plaintiff now seeks class certification of a class of California consumers under Fed. R. Civ. P. 23(a) and 23(b)(3) for damages and other relief and proposes that the Court define the Class as:

> All persons who, on or after February 13, 2017, purchased in the state of California for household use and not for resale or distribution Defendant's Six Star Pre-Workout Explosion and Defendant's Six Star Pre-Workout Explosion Ripped product in a 32 ounce or 20 ounce container.

Whether Defendant's Pre-Workout Products contained excessive nonfunctional slack-fill that was unfair, deceptive, and/or misleading to a reasonable consumer is the predominant question in this litigation because this threshold question must be answered affirmatively by the finder-of-fact for Plaintiff and the Class to prevail on any of their claims. Critically for the purposes of this Motion, this question is an objective question susceptible to common class-wide proof because, as this Court already determined in its ruling denying Defendant's Motion to Dismiss, it concerns whether Defendant's product packaging is objectively false, unfair, deceptive, and/or misleading to a "reasonable person," and not whether the claim is subjectively false to any particular individual. *See* Dkt. No. 25 at 3; *see also Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468, 481-83 (C.D. Cal.

2012); *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 982 (C.D. Cal. 2015)[1]; *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1100 (N.D. Cal. 2018).

Furthermore, Plaintiff offers expert opinion testimony that demonstrates a methodology for proving damages on a class-wide basis without the need for any individual inquiry of absent members of the Class. Plaintiff maintains that under *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013), the appropriate measure of damages is the percentage of Defendant's Pre-Workout Products' retail price attributable to the deceptive packaging. The Declaration of Thomas J. Maronick describes and demonstrates a methodology for measuring the amount of "Price Premium" that is attributable to the deceptive packaging and excess slack-fill in Defendant's Pre-Workout Products. By multiplying the corresponding discount of the percentage price premium with the total retail dollar value of all Pre-Workout Products sold in California during the Class Period, Plaintiff can compute the total dollar difference between what the Class paid for the Pre-Workout Products, and the value of what they actually received (*i.e.* Pre-Workout Products that did not contain as much powdered product as represented by the packaging). This difference between what members of the Class paid for and what Defendant actually provided is a valid measure of damages for the claims brought by Plaintiff on behalf of the proposed Class. Importantly, Plaintiff's damages methodology comports with the rule set forth by the Supreme Court in *Comcast* because it measures only those damages attributable to Plaintiff's case theory: the Defendant's deceptive packaging of its Pre-Workout Products caused Class members to pay for more than what they received.

---

[1] *aff'd sub nom. Briseno v. ConAgra Foods, Inc.*, 674 F. App'x 654 (9th Cir. 2017), and *aff'd sub nom. Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017).

The other applicable Rule 23(a) prerequisites (numerosity, commonality, typicality, and adequacy), and the additional Rule 23(b)(3) requirement of superiority are also easily satisfied in this case, as more fully demonstrated below.

For these reasons, and those stated further below, Plaintiff respectfully requests that the Court grant Plaintiff's motion for class certification, certify the proposed Class, designate Plaintiff as Class Representative, appoint Plaintiff's Counsel as Class Counsel, and direct Defendant to issue notice to the Class in a form to be determined.

## II.    SUMMARY STATEMENT OF FACTS

### A.    Defendant's Pre-Workout Products Were Uniformly Deceptive.

During the relevant Class Period, Defendant sold in excess of ████████ worth of its Pre-Workout Products.[2] All of Defendant's powdered Pre-Workout Products sold during the Class Period were packaged either in 32 oz. containers or 20 oz. containers.[3] Specifically, while Defendant originally packaged its powdered Pre-Workout Products in 32 oz. containers, in 2019 Defendant began to package its Pre-Workout Products in 20 oz. containers due to ████████████ ████████████████[4] This is none too surprising given that Defendant's original 32 oz. Pre-Workout Products were all substantially underfilled.

---

[2] While no source has produced the complete retail dollar amounts for the number of Pre-Workout Products sold during the entire class period, partial data produced by Defendant indicates that the total value of Pre-Workout Products sold in California from February 2017 through September 2020 was ████████. *See* Declaration of Eugene Y. Turin, filed herewith, at ¶ 15 (citing IOV_000027).

[3] May 19, 2021 deposition of Kelly Albert, filed herewith as <u>Exhibit 1</u>, at 23:6–22; November 3, 2021 deposition of Jeremy Allbright, filed herewith as <u>Exhibit 2</u>, at 29:9–23.

[4] *See* document produced in discovery as IOV_000631, filed herewith as <u>Exhibit 3</u>, at 1; *see also* Albert Deposition, Ex. 1, at 20:21–21:10, 24:13–24.

Specifically, Defendant's 32 oz. Pre-Workout Products contained between 168 grams of powdered product and 281 grams of powdered product in the *same* 32 oz. container.[5] While Defendant did not maintain data on the fill levels of its 32 oz. Pre-Workout Products, as evidenced by Plaintiff's experience, the 32 oz. Pre-Workout Product she purchased which was labeled as containing 7.91 ounces of powdered product (224.24 grams) was approximately ***66%*** empty.[6] This was further confirmed by Plaintiff's expert, Glenn May, who measured the amount of slack-fill in an identical 32 oz. Pre-Workout Product labeled as containing 7.91 ounces of powdered product and found it to be 64% empty.[7] Even Defendant's 32 oz Pre-Workout Product with 281 grams of powdered product is 62% empty. Accordingly, at all relevant times Defendant's 32 oz. Pre-Workout Products contained more than 62% slack-fill.[8]

Defendant's 20 oz. Pre-Workout Products contained identical amounts of powdered product as its 32 oz. Pre-Workout Products, but simply packaged in a smaller container.[9] As admitted to by Defendant, its 20 oz. Pre-Workout Products

---

[5] *See* document produced in discovery as IOV_000214, filed herewith as <u>Exhibit 4</u> (providing specifications for a 32 oz. version of Defendant's Pre-Workout Product containing 281.24 grams of product); documents produced in discovery as IOV_000008, filed herewith as <u>Exhibit 5</u> (showing product labeling for a 32 oz. Pre-Workout Product with 168 grams of product).

[6] *See* Albert Deposition, Ex. 1, at 46:5–7; Complaint, Dkt. No. 1, at ¶ 18.

[7] *See* Declaration of Expert Glenn May, filed herewith as <u>Exhibit 6</u>, at 30.

[8] *See* Supplemental Declaration of Glenn May, filed herewith as <u>Exhibit 7</u>, at ¶ 6(e).

[9] *See* document produced in discovery as IOV_000047, filed herewith as <u>Exhibit 8</u> (providing specifications for a 20 oz. version of Defendant's Pre-Workout Product containing 210.04 grams of product); *see also* document produced in discovery as

contained 40% to 60% slack-fill.[10] Indeed, as confirmed by Plaintiff's expert, some of Defendant's 20 oz. Pre-Workout Products contained even more than 60% slack-fill.[11]

As alleged by Plaintiff, and supported by Plaintiff's market analysis, Defendant's motivation for the excessive amount of slack-fill in its product is clear—to create the perception that consumers are getting a large amount of product based on the size of the container while in fact providing a significantly reduced amount of actual product.[12] Indeed, this very fact is precisely why under California and federal regulations "[a] container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack-fill." 21 C.F.R. 100.100(a); California Business & Professions code § 12606(b). Furthermore, as proven through discovery and Plaintiff's expert analysis, the slack-fill in Defendant's 32 oz. and 20 oz. Pre-Workout Products was nonfunctional as defined under federal and California regulations.[13] Defendant's 32 oz. and 20 oz. Pre-Workout Products all contained the same contents – a pre-set amount of powdered product, a plastic scoop, and desiccant packet(s) to absorb

---

IOV_00197, filed herewith as <u>Exhibit 9</u> (providing specifications for a 20 oz. version of Defendant's Pre-Workout Product containing 281.24 grams of product).

[10] *See* Albert Deposition, Ex. 2, at 46:2–4; *see also* document produced in discovery as IOV_000645, filed herewith as <u>Exhibit 10</u>, at 1.

[11] *See* May Declaration, Ex. 6, at 31 (noting that Defendant's 20 oz. Pre-Workout Product labeled as containing 5.91 ounces of product (168 grams), was 68% empty).

[12] *See* Expert report of Thomas J. Maronick, filed herewith as <u>Exhibit 11</u>, at 10 (concluding that consumers expect Defendant's Pre-Workout Products to be more full than they actually are).

[13] May Declaration, Ex. 6, at ¶ 123 (concluding based on his analysis that the slack-fill in Defendant's Pre-Workout Products was "nonfunctional").

moisture[14] – and were all filled and packaged using the same process.[15] Accordingly, whether the slack-fill in Defendant's 32 oz. and 20 oz. Pre-Workout Products was "nonfunctional" is a common question that is subject to common resolution and a detailed analysis of the merits of Plaintiff's and the Class's claims is not necessary at this stage. However, it is worth noting that there can be no question that Defendant's 32 oz. Pre-Workout Products contained nonfunctional slack-fill given that Defendant was clearly able to package the same exact contents in its smaller 20 oz. containers and specifically chose to do so as a result of ████ ████████████████████████████████████████████████████[16] But Defendant's efforts to downsize its packaging and reduce slack-fill was still lacking, as its 20 oz. Pre-Workout Products still contained as much as *68%* slack-fill and could have easily been packaged in smaller 16 oz. containers.[17] In short, Defendant's Pre-Workout Products contained nonfunctional slack-fill.[18]

In addition, while as noted above the issue of whether the nonfunctional slack-fill in Defendant's Pre-Workout Products was deceptive to consumers is subject to a common determination based on an objective analysis, Plaintiff's expert analysis of consumer perceptions of the product packaging for Defendant's Pre-Workout Products makes clear that consumers would expect to receive much more product than was actually provided by Defendant in its 32 oz. and 20 oz. Pre-Workout Products.[19]

---

[14] Albert Deposition, Ex. 1, at 29:3–12.

[15] Allbright Deposition, Ex. 2, at 18:12–18, 20:24–25, 28:13–29:8.

[16] *See* IOV_000631, Ex. 3, at 1.

[17] May Declaration, Ex. 6, at ¶¶ 103–105.

[18] May Declaration, Ex. 6, at ¶¶ 122–123.

[19] Maronick Report, Ex. 11, at 10.

**B.      Plaintiff Purchased Defendant's 32 Oz. Pre-Workout Product In Reliance On Its Product Packaging.**

Plaintiff alleges that she purchased one of Defendant's 32 oz. Pre-Workout Products during the class period at a Walgreens store located in California.[20] Because of the opaque nature of Defendant's Pre-Workout Products that did not allow Plaintiff to see how much product was actually in the package, Plaintiff relied on the dimensions of the container to determine the quantity of pre-workout powder in it and purchase it instead of other products.[21] However, Plaintiff would not have purchased Defendant's Pre-Workout Product, or would have paid less for it, had she known the amount of product that was actually inside.[22]

## III. THE PROPOSED CLASS.

Plaintiff alleges causes of action under California consumer protection laws and for unjust enrichment, thus Plaintiff proposes certification of a California statewide class which the Court define as:

> All persons who, on or after February 13, 2017, purchased in the state of California for household use and not for resale or distribution Defendant's Six Star Pre-Workout Explosion and Defendant's Six Star Pre-Workout Explosion Ripped product in a 32 ounce or 20 ounce container.

Plaintiff seeks certification of this proposed Class under Fed. R. Civ. P. 23(b)(3) for monetary relief.

---

[20] Complaint, at ¶¶ 38–39.

[21] Complaint, at ¶¶ 42–44; March 26, 2021 Deposition of Emiley Schoonover, filed herewith as Exhibit 12, at 61:3–10; 62:11–20; 64:14–24.

[22] Complaint, at ¶ 35; Schoonover Deposition, Ex. 12, at 71:1–15.

# IV.   ARGUMENT

## A.   Legal Standard.

To certify a class action under Rule 23, Plaintiff must satisfy the four prerequisites under Rule 23(a) (numerosity, commonality, typicality, and adequacy of representation), as well as one of the three subsections of Rule 23(b). *Hadley*, 324 F. Supp. at 1092 (citing *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012); *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)). For a class certified under Rule 23(b)(3), Plaintiff must show that "questions of law or fact common to class members predominate over any question affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

While the Court must conduct a "rigorous analysis" to ensure that Rule 23 requirements are satisfied (*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)), "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen v. Conn. Ret. Plans & Trust*, 568 U.S. 455, 466 (2013). "Merits questions may be considered to the extent – but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.*

## B.   The Requirements of Rule 23(a) are Satisfied.

### 1.   Numerosity.

Rule 23(a)(1) requires that the proposed classes be so "numerous that joinder of all members is impractical." The numerosity requirement is often easily satisfied, when, as here, Plaintiff has "provided evidence that the unit and dollar sales of the . . . products at issue . . . suggest at least thousands of Class Members bought these products during the class period." *Hadley*, 324 F. Supp. at 1093 (citing *Twegbe v. Pharmaca Integrative Pharmacy, Inc.*, No. 12-cv-5080, 2013 WL 3802807, *3 (N.D. Cal. July 17, 2013) (finding that numerosity is "usually satisfied where the

1  class comprises 40 or more members"). As previously stated, the sales data
2  produced by Defendant indicates that during the class period it sold in California
3  over ████████ packages of its Pre-Workout Products worth ██████████ in retail
4  value.[23] Accordingly, the numerosity requirement is plainly satisfied.

**2.    Commonality.**

6  Rule 23(a)(2) is satisfied if "there are questions of law or fact common to the
7  class." Fed. R. Civ. P. 23(a)(2). The commonality requirement is construed
8  liberally, and the existence of some common legal and factual issues is sufficient. *In*
9  *re ConAgra Foods*, 90 F. Fupp. 3d at 972 (citing *Jordan v. County of Los Angeles*,
10 669 F.2d 1311, 1320 (9th Cir. 1982)). "What matters" in establishing commonality
11 is "the capacity of a classwide proceeding to generate common answers apt to drive
12 the resolution of the litigation." *Dukes*, 564 U.S. at 350. "The existence of shared
13 legal issues with divergent factual predicates is sufficient, as is a common core of
14 salient facts[.]" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).
15 This exists "where a defendant has engaged in standardized conduct toward
16 members of the class," *Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-cv-0660,
17 2016 WL 4992504, at *6 (S.D. Ill. Sept. 16, 2016) (citation omitted).

18 Here, there are questions of fact and law that are common amongst all
19 members of the Subclasses. Whether the slack-fill in Defendant's 32 oz. and 20 oz.
20 Pre-Workout Products was nonfunctional is a common question that is subject to
21 class-wide resolution. Defendant's Pre-Workout Products were all subject to the
22 same packaging procedures, contained the same contents, and its 32 oz. Pre-
23 Workout Products were all more than 62% empty, while all of Defendant's 20 oz.

---

26 [23] Turin Declaration, Ex. 1, at ¶ 16.

Pre-Workout Products were all more than 40% empty.[24] Thus, whether any potential safe-harbor may apply to Defendant's Pre-Workout Products is subject to a common resolution. Furthermore, all members of the Class were exposed to the same allegedly deceptive oversized product packaging. *See In re ConAgra Foods*, 90 F. Supp. 3d at 973 (noting that commonality was satisfied because "all class members were exposed" to the same product packaging); *see also Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 562 (N.D. Cal. 2020) (finding commonality was satisfied where the subclasses sought to be certified involved products that contained excess sugars ranging from "13.33% to 40% of calories" but which were all "well above the 5% and 10% daily limits endorsed by authoritative sources"). As such, as this Court has already found, whether Defendant's packaging was false, unfair, deceptive, and/or misleading in violation of California law by containing nonfunctional slack-fill is a common question that is subject to the objective reasonable consumer test that does not require "delving into individual transactions." *See Brown v. Hain Celestial Grp., Inc.*, No. 11-cv-03082, 2014 WL 6483216, at *11 (N.D. Cal. Nov. 18, 2014). Finally, Plaintiff's unjust enrichment claim ultimately derives from Defendant's deceptive conduct and the funds retained by Defendant as a result such that it too is "appropriate for class certification as [it] require[s] common proof of the defendant's conduct and raise[s] the same legal issues for all class members." *Astiana v. Kashi Co.*, 291 F.R.D. 493, 502 (S.D. Cal. July 30, 2013). Accordingly, there are numerous common questions across the Class which answered "will *be* the resolution of this suit" such that commonality is satisfied. *Id.* (emphasis in original).

---

[24] Albert Deposition, Ex. 2, at 29:3–12, 46:2–4; Allbright Deposition, Ex. 3, at 18:12–18, 20:24–25, 28:13–29:8.

### 3. **Typicality**.

Under Rule 23(a)(3), a class representative's claims or defenses have to be "typical of the claims or defenses of the class." Typicality is assessed under a "permissive standard" and a representative's claims are typical "if they are reasonably co-extensive with those of absent class members." *Hanlon*, 150 F.3d at 1011. "A plaintiff's claim meets this requirement if it arises from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory." *In re ConAgra Foods*, 90 F. Supp. 3d at 973 (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)).

Here, Plaintiff alleges a common deceptive practice by Defendant that she and all of the other members of the Class were exposed to—Defendant's use of an oversized package that contained substantial amounts of slack-fill. *See Brown*, 2014 WL 6483216, at *13 (finding that typicality was satisfied because "the acts of alleged 'deception,' the labels, are uniform . . . . And the named plaintiffs do allege that the whole class was exposed to that claim"). Furthermore, Plaintiff testified that she purchased Defendant's Pre-Workout Product in reliance on its product packaging and the amount of product that she thought would actually be provided inside.[25] "These factual circumstances demonstrate that Plaintiff's claims are 'reasonably co-extensive' with unnamed class members" who similarly would have relied on Defendant's product packaging. *McCrary v. Elations Co., LLC*, No. 13-cv-00242, 2014 WL 1779243, at *10 (C.D. Cal. Jan. 13, 2014) (internal citations omitted). In addition, Plaintiff "alleges to have suffered the same type of economic injury and seeks the same type of damages as the putative class members, namely a refund of the purchase price" such that Plaintiff's interests "align[] with the

---

[25] Schoonover Deposition, Ex. 12, at 61:3–10; 62:11–20; 64:14–24.

interests of the class."[26] *McCrary*, 2014 WL 1779243, at *10 (citing *Wolin v. Jaguar Land Rover North America, LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010); *Astiana*, 291 F.R.D. at 502; *Guido*, 284 F.R.D. at 479); *Astiana*, 291 F.R.D. at 502.

Finally, the fact that Plaintiff purchased one particular flavor and type of Defendant's 32 oz. Pre-Workout Product does not mean that her claims are atypical of other members of the class who may have purchased Defendant's 20 oz. Pre-Workout Products. This is because the alleged "deception" here is uniform, with Defendant using oversized misleading packages with excessive nonfunctional slack-fill for all of its Pre-Workout Products. *See Brown*, 2014 WL 6483216, at *13; *Chavez v. Blue Sky Nat. Beverage Co.*, 268 F.R.D. 365, 377 (N.D. Cal. 2010) (finding that the plaintiff's claims were typical of the class that included purchasers of products with an "allegedly false statement, worded in several variations, made on every Blue Sky container . . . and [which] therefore arise from the same facts and legal theory"). Accordingly, Plaintiff's claims are "link[ed]" to the claims arising from products that she herself did not buy, and the challenged deceptive conduct is not "unique" to any of the products purchased by the Class Plaintiff seeks to represent such that typicality is satisfied. *Brown*, 2014 WL 6483216, at *13.

### 4. Adequacy.

Rule 23(a)(4) requires that the class representative and her counsel adequately represent the proposed class. Whether adequacy is met involves a two-part inquiry: "(1) do the named plaintiff[] and [her] counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel

---

[26] Schoonover Deposition, Ex. 12, at 71:1–15, 192:5–14, 194:1–18 (noting that the 32 oz. Pre-Workout Product Plaintiff purchased was "overvalued" and that she is seeking a "full refund" for herself and the "larger class of people who have experienced something similar to me").

prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. Here, there are no conflicts of interest between Plaintiff and her counsel and the interests of any other Class members. Plaintiff purchased the same Pre-Workout Product as the other members of the Class, alleges that she relied on the same misrepresentations regarding the amount of product inside, and seeks the same relief for herself and the other members of the Class.[27] *See Astiana*, 291 F.R.D. at 503 (noting that the plaintiff's interests were "coextensive with the proposed class" as she was "exposed to the same alleged misrepresentation on [the defendant's] product labels" and "testified that she would have either paid less or purchased other products had she not been deceived"). Nor is there any question that Plaintiff will "prosecute the action vigorously on behalf of the class" given her willingness to participate in the case and sit for a lengthy six-hour deposition.[28] *Guido*, 284 F.R.D. at 480.

Similarly, Plaintiff's counsel has extensive experience in prosecuting consumer class actions and have been appointed class counsel in numerous cases on behalf of hundreds of thousands of class members.[29] Plaintiff's counsel has also dutifully prosecuted this case, including conducting extensive written and oral discovery of Defendant's corporate representative, third-party discovery, and obtaining two expert reports.[30] Plaintiff's counsel is committed to prosecuting this action to conclusion, and have the necessary resources to do so. *See McCrary*, 2014 WL 1779243, at *12 (finding that plaintiff's counsel was adequate given that they

---

[27] Schoonover Deposition, Ex. 12, at 61:3–10; 62:11–20; 64:14–24, 71:1–15; 192:5–14, 194:1–18.

[28] Schoonover Deposition, Ex. 12, at 2:22, 206:2.

[29] *See* Turin Declaration, at ¶ 18.

[30] *See* Turin Declaration, at ¶ 20.

1 are "an experienced class action firm that has participated in many cases similar to
2 the present action and has the resources and intent to vigorously prosecute this
3 action").

## 5.    Ascertainability.

5    Some courts in the Ninth Circuit have previously found that Rule 23(a)
6 imposes a separate requirement that a plaintiff seeking class certification must also
7 demonstrate that it is administratively feasible to ascertain the members of the class.
8 *See Astiana*, 291 F.R.D. at 500 ("The class definition must be sufficiently definite
9 so that it is administratively feasible to determine whether a particular person is a
10 class member") (quoting *Wolph v. Acer Am. Corp.,* 272 F.R.D. 477, 482 (N.D. Cal.
11 2011)); *McCrary*, 2014 WL 1779243, at *7; *Brown*, 2014 WL 6483216, at *9.
12 However, the Ninth Circuit in *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th
13 Cir. 2017) definitively held that Rule 23 does not require proof "that there is an
14 administratively feasible way to determine who is in the class." 844 F.3d at 1124,
15 1126 ("In sum, the language of Rule 23 does not impose a freestanding
16 administrative feasibility prerequisite to class certification"). Critically, the Ninth
17 Circuit found that when it comes low-cost consumer goods, such as the Pre-
18 Workout Products at issue here, requiring common proof of class membership
19 through purchase records would effectively bar consumer class actions involving
20 such products because most consumers do not maintain such records. *Id.* at 1129;
21 *see also Brown*, 2014 WL 6483216, at *9 (noting that "Few people retain receipts
22 for low-priced goods . . . . Yet it is precisely in circumstances like these, where the
23 injury to any individual consumer is small, but the cumulative injury to consumers
24 as a group is substantial. . . . . In the absence of a class action, the injury would go
25 unredressed") (quoting *Lilly v. Jamba Juice Co.*, No. 13-cv-02998, 2014 WL
26 4652283, at *4 (N.D. Cal. Sept. 18, 2014)); *McCrary*, 2014 WL 1779243, at *7
27 ("Defendant's concern is that class members do not have actual proof that they

28

belong in the class. If Defendant's argument were correct, 'there would be no such thing as a consumer class action'") (quoting *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 535 (N.D. Cal. 2012)).

Addressing the concerns raised by the defendant regarding its ability to challenge any potential claims made and its due process rights, the Ninth Circuit in *Briseno* essentially acknowledged that self-identifying affidavits submitted by class members are sufficient. *See* 844 F.3d at 1130–1132. Furthermore, the Ninth Circuit found that in cases where the defendant's liability can be determined on an aggregate basis by "calculating the price premium attributable to the allegedly false statement" and "multiplying that premium by the total number of units sold during the class period," "the identity of particular class members does not implicate the defendant's due process interests[.]" *Id.* at 1132.

In sum, under the Ninth Circuit's authority in *Briseno*, ascertainability is not an element of class certification that must be met under Rule 23. Furthermore, to the extent that the Court has any concerns how the class action will ultimately be managed and Class members' claims for damages will be dealt with, as numerous courts have found in similar circumstances, self-identification of class members through affidavits is a valid procedure in similar consumer class actions involving low-cost goods. *See Brown*, 2014 WL 6483216, at *10 (collecting authorities); *McCrary*, 2014 WL 1779243, at *7 (citing *Ries*, 287 F.R.D. at 535). In addition, as noted by the Ninth Circuit in *Briseno*, Plaintiff presents a damages model by his expert, Thomas Maronick, that "calculate[es] the price premium attributable" to the allegedly oversized containers used for Defendant's Pre-Workout products, and

which can be "multipl[ied] . . . by the total number of units sold during the class period." *Briseno*, 844 F.3d at 1132.[31]

Finally, even if this Court were to impose a strict ascertainability requirement, the nature of Defendant's Pre-Workout Products and where they were sold would ultimately permit identification of a large number of Class members. Specifically, Defendant's Pre-Workout Product was sold in, amongst other stores, Walgreens, CVS, Wal-Mart, and Amazon.com.[32] Each of these retailers have customer-loyalty programs that track consumer purchases and would allow identification of individuals who purchased the subject products.[33] Indeed, Plaintiff was able to produce a copy of her purchase transaction through her Walgreens rewards account.[34]

## C. The Requirements of Rule 23(b)(3) are Satisfied.

### 1. Predominance.

Certification of a class under Rule 23(b)(3) requires a showing that "questions of law or fact common to the members of the class predominate over any

---

[31] *See* Turin Declaration, at ¶ 16; Maronick Report, Ex. 11, at 10–11 (finding that Defendant's Pre-Workout Products are being sold at a price premium of between "$4.15 and $5.09 more than its perceived value").

[32] *See* www.walgreens.com/store/c/six-star-pre-workout-explosion-fruit-punch/ID=prod6255002-product; www.cvs.com/shop/six-star-pre-workout-explosion-prodid-219035; www.walmart.com/ip/Six-Star-Pro-Nutrition-Amino-Acid-Supplements-Fruit-Punch-7-g-Per-Serving-7-41-oz/39881135; www.amazon.com/Six-Star-Explosion-Powerful-Intensity/dp/B00OXLP6H4.

[33] www.walgreens.com/topic/promotion/mywalgreens.jsp; www.cvs.com/extracare/home; https://www.walmart.com/cp/walmart-credit-card/632402.

[34] *See* document produced in discovery by Plaintiff as Schoonover 00005, filed herewith as <u>Exhibit 13</u>.

questions affecting only individual members" and that "a class action is superior to other available methods" of adjudicating the controversy. The predominance inquiry focuses on the relationship between the common and individual issues. *Chavez*, 268 F.R.D. at 378 (citing *Hanlon*, 150 F.3d at 1022). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than on an individual basis.'" *Id.* (quoting *Hanlon*, 150 F.3d at 1022).

Here, the common questions necessary to establish Defendant's liability for the allegedly deceptive conduct predominate over any individual issues. Plaintiff brings claims against Defendant under California's UCL, FAL, and CLRA consumer protection statutes.[35] As discussed above in analyzing the commonality prong under Rule 23(a), "[c]ourts generally consider claims under the [UCL], [FLA], and [CLRA] together." *In re ConAgra Foods, Inc.*, 90 F.Supp.3d at 982 (collecting authorities). "Each statute allows plaintiffs to establish materiality and reliance (i.e. causation and injury) by showing that a reasonable person would have considered the defendant's representation material." *Id.* (citing *Forcellati v. Hyland's Inc.*, No. 12-cv-1983, 2014 WL 1410264, at *9 (C.D. Cal. April 9, 2014); *In re Tobacco II Cases*, 46 Cal. 4th 298, 327 (2009); *In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 147 (2010)). As such, given California's "approach to proving materiality, reliance, and causation in consumer-deception cases makes those questions amenable to common proof." *Brown*, 2014 WL 6483216, at *15.

While Defendant will likely argue that individual issues predominate because Plaintiff cannot establish that each member of the class relied on the allegedly

---

[35] Complaint at ¶¶ 63–108.

deceptive package, courts have regularly found that predominance is satisfied where the plaintiff makes a showing that the alleged misrepresentation was "material" and "used consistently through the Class Period[.]" *Astiana*, 291 F.R.D. at 505; *McCrary*, 2014 WL 1779243, at *14; *Krommenhock*, 334 F.R.D. at 564 ("The relevant analysis under California law does not consider whether each class member saw and relied on each of the Challenged Statements . . . but instead whether the Challenged Statements were used consistently through the Class Period . . . and . . . would be material to a reasonable consumer"). At the class certification stage Plaintiff need only show that she "may be able to establish the materiality of the representation" to consumers' "purchasing decision" and that the alleged misrepresentation is not "so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it." *Astiana*, 291 F.R.D. at 505; *see also id.* ("the ultimate determination [of materiality] is to be made by the trier of fact").

Here, Plaintiff presents ample evidence that Defendant's oversized and under-filled containers were material to consumers. To begin with, the federal and California provisions regarding nonfunctional slack-fill themselves explicitly state that "[a] container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack fill." 21 C.F.R. § 100.100; Cal. Bus. & Prof. Code § 12606(b). Furthermore, Plaintiff's expert, Thomas Maronick, conducted a consumer survey that revealed that consumers expected Defendant's 32 oz. Pre-Workout Products to be "78.3%" full when shown an image of an unopened container labeled as containing 224 grams of product, and perceived it to be only "57.36%" full when shown an image of it opened, and expected Defendant's 20 oz. Pre-Workout Products to be "80%" full when shown an image of an unopened container labeled as containing 231 grams of product, and perceived it to be only "two-thirds [66%]" full when shown an image

of it opened.[36] This difference was also clearly material to consumers, as Mr.
Maronick concluded that "given the percent full the respondents see when shown
the opened package, they would spend significantly less than the $15.00 price for
the product, i.e. only between three-quarters of the $15.00 price (in the case of the
20 oz package) and two-thirds of the $15.00 price (in the case of the 32 oz
package)."[37] Critically, given that Mr. Maronick's survey was conducted based on
images taken of the Pre-Workout Products, had the individuals actually been able to
visually inspect Defendant's Pre-Workout Products, they would have likely
discovered that, as Mr. May calculated, the 32 oz. Pre-Workout Product was only
36% full (as opposed to the perceived 57.36% full based on the image alone) and
Defendant's 20 oz. Pre-Workout Product was only 46% full (as opposed to the
perceived 66% full based on the image alone).[38] As such, consumers who actually
purchase Defendant's Pre-Workout Products and actually get to analyze the
products would determine that they are even more overpriced than determined by
Mr. Maronick's survey and that the deception is even more material. Indeed, it is
telling that the number one review for Defendant's product on Amazon is titled
"You won't get the amount you pay for" and contains the following description,
"After opening the product I realized that you get ripped off with the actual amount
you pay for. There's less than a quarter container after removing 3 desiccant
pouches."[39] Other courts have found such evidence "sufficient factual basis to

---

[36] Maronick Report, Ex. 11, at 10; Maronick Report, Ex. 11, at Appendix C.

[37] Maronick Report, Ex. 11, at 10.

[38] May Declaration, Ex. 6, at 29, 30.

[39] www.amazon.com/Six-Star-Explosion-Powerful-
Intensity/dp/B00OXLP6H4/?th=1#customerReviews (last accessed December 20,
2021).

warrant an inference of reliance among the putative class[.]" *McCrary*, 2014 WL
1779243, at \*14.

Furthermore, as discovery has shown, Defendant's Pre-Workout Products
were all packaged according to the same packaging process and instructions, and
contained pre-determined set amounts of slack-fill in identical 32 oz. or 20 oz.
packages. *See* Section II.A *infra.* As such, the allegedly deceptive packaging was
"used consistently through the Class Period" with *all* class members having been
exposed to it. *See Krommenhock*, 334 F.R.D. at 564; *see also Astiana*, 291 F.R.D. at
505 ("For the purposes of class certification, it is sufficient that the alleged material
misstatement and omission was part of a common advertising scheme to which the
entire class was exposed, and is a sufficiently definite representation whose
accuracy has been legitimately called into question").

Plaintiff also presents a "likely method for determining class damages[.]"
*Chavez*, 268 F.R.D. at 379. As presented in the analysis of Plaintiff's expert,
Thomas Maronick, consumers pay a price premium for Defendant's Pre-Workout
Products based on the amount of product that they believe should be inside, versus
the amount of product that is actually provided.[40] As such, Plaintiff is able to
corelate that amount of slack-fill in Defendant's Pre-Workout Products with the
price premium that consumers paid. Such damages models have been found
sufficient by numerous other courts, including in cases where the plaintiff(s)
presented only a theoretical model that did not actually calculate the potential
damages as Plaintiff has done here. *See Astiana*, 291 F.R.D. at 506 (finding that the
plaintiffs' proposal that they can "calculate the total restitutionary damages based
upon sales, profits and prices data from records generally maintained by [the

---

[40] Maronick Report, Ex. 11, at 10.

defendant]" was a "viable theory of how to calculate damages"); *McCrary*, 2014 WL 1779243, at *15 ("Plaintiffs may seek some amount representing the disparity between their expected and received value . . . . This reduction in allowable damages, however, is not fatal to class certification").

Most importantly, Plaintiff's damages model "ties damages to [her] theory of liability[.]" *Brown*, 2014 WL 6483216, at *18 (citing *Leyva v. Medline Industries, Inc.*, 716 F.3d 510 (9th Cir. 2013); *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013)). Specifically, Plaintiff's expert explains that through his consumer survey he was able to determine the price premium associated with the excess slack-fill in Defendant's Pre-Workout Products.[41] Importantly, Plaintiff's expert was able to determine the price premium by examining consumers' reactions specifically to the oversized and underfilled packaging used by Defendant.[42] Plaintiff's proposed damages theory is thus more than sufficient to support class certification. *See Krommenhock*, 334 F.R.D. at 565, 574 (discussing how a similar survey methodology to determine class damages by presenting the misrepresentation to consumers and calculating the price premium associated with it was sufficient to support class certification).

Finally, Plaintiff's claim for unjust enrichment arises from Defendant's deceptive conduct that gives rise to Plaintiff's UCL, FAL, and CLRA claims. As such, "the crux of plaintiff['s] claims is that defendant unjustly retained the benefits of its sale" of Defendant's Pre-Workout Products that is falsely advertised. *Cartwright v. Viking Industries, Inc.*, No. 07-cv-02159, 2009 WL 2982882, at *13 (E.D. Cal. Sept. 14, 2009). Because "[u]nder California law, 'Unjust Enrichment'

---

[41] Maronick Report, Ex. 11, at 10–11.

[42] Maronick Report, Ex. 11, at 8.

does not describe a theory of recovery, but an effect: the result of a failure to make restitution under circumstances where it is equitable to do so," whether Defendant's deceptive conduct entitles Plaintiff and the other Class Members to restitution of the price premium which they paid, is similarly a common question that predominates any individualized inquiry. *Cartwright*, 2009 WL 2982887, at *13 (quoting *Lauriedale Assocs., Ltd. v. Wilson*, 7 Cal. App. 4th 1439, 1448 (1st Dist. 1992)); *Astiana*, 291 F.R.D. at 505 ("quasi-contract claims are appropriate for class certification as they require common proof of the defendant's conduct and raise the same legal issues for all class members").

### 2. Superiority.

Finally, class certification under Rule 23(b)(3) must be a superior method of resolving class members' claims. In making such a determination, courts typically evaluate four factors: (1) the interest of each class member in individually controlling the prosecution or defense of separate actions, (2) the extent and nature of any litigation concerning the controversy already commenced, (3) the desirability of concentrating the litigation of the claims in a particular forum, and (4) the difficulties likely to be encountered in the management of a class action. *In re ConAgra Foods*, 90 F. Supp. 3d at 1033 (citing *Edwards v. City of Long Beach*, 467 F. Supp. 2d 986, 992 (C.D. Cal. 2006)). In short, "[t]he superiority requirement tests whether 'classwide litigation of common issues will reduce litigation costs and promote greater efficiency.'" *Astiana*, 291 F.R.D. at 507 (quoting *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996)).

Here, the "damages suffered by each putative class member are not large," amounting to approximately $5 based on Plaintiff's expert report,[43] as such, "th[e

---

[43] Maronick Report, Ex. 11, at 10–11.

first] factor weighs in favor of certifying a class action." *In re ConAgra Foods*, 90 F. Supp. 3d at 1033 (quoting *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001)); *Astiana*, 291 F.R.D. at 507 (finding that superiority was satisfied because the case "involves multiple claims for relatively small individual sums" and "it would not be economically feasible to obtain relief for each class member given the small size of each class member's claim"). The second factor also favors class certification as there is currently no other litigation pending regarding deceptive packaging and slack-fill in Defendant's Pre-Workout Products. Given "the small recovery that any individual plaintiff can expect" having the litigation proceed "in a single forum is appropriate." *In re ConAgra*, 90 F. Supp. 3d at 1033. In addition, "the proposed class involves only California purchasers, making this forum desirable for the class." *McCrary*, 2014 WL 1779243, at *16. Accordingly, the third factor is also satisfied.

Finally, there are no concerns with manageability of the class action. Plaintiff's class definition "'provide[s] objective criteria that allow class members to determine whether they are included in the proposed class,' and that is sufficient." *Krommenhock*, 334 F.R.D. at 566 (quoting *Farar v. Bayer AG*, No. 14-cv-04601, 2017 WL 5952876, at *14 (N.D. Cal. Nov. 15, 2017)). An individual is a member of the class if they have purchased one of Defendant's Pre-Workout Products during the relevant time period such that membership in the class is based on an entirely objective criteria that does not require determination of any questions of fact or law. "Moreover, as affirmed by the Ninth Circuit in *Briseno v. ConAgra Foods*[] . . . it is not a barrier to class certification that consumers may be required to self-identify to attest to purchased the Products at issue." 844 F.3d at 1132.

## V.    CONCLUSION

Defendant engaged in a uniform deceptive practice of selling its Pre-Workout Products in oversized containers that were significantly underfilled.

Plaintiff and the other members of the proposed Class that she seeks to certify were all exposed to this deceptive practice, that was material to their decision to purchase the products, and resulted in Plaintiff and the other Class members paying more for the products than they otherwise would have had they known that the containers were as much as ***two-thirds empty***. Given the relatively small amount of damages that each Class member has suffered, but the significant damages that they have experienced collectively, and for the reasons outlined in this motion, Plaintiff respectfully requests that the Court certify the proposed Class, appoint Plaintiff as Class Representative, appoint her counsel as Class Counsel, and direct Defendant to issue notice to the Class in a form to be determined .

DATED: December 24, 2021           Respectfully submitted,

EMILEY SCHOONOVER, individually and on behalf of similarly situated individuals

By: /s/ *Eugene Y. Turin*

Eugene Y. Turin (*pro hac vice*)
McGuire Law, P.C.
55 W. Wacker Dr., 9th Fl.
Chicago, IL 60601
eturin@mcgpc.com

*Counsel for Plaintiff and Proposed Class Counsel*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **<u>CERTIFICATE OF SERVICE</u>**

I, Eugene Y. Turin, an attorney, certify that on December 24, 2021, I filed the foregoing *Plaintiff's Notice of Motion and Motion for Class Certification; Memorandum of Points and Authorities In Support Thereof* and supporting papers via the Court's CM/ECF electronic filing system.  A copy of said documents will be electronically transmitted to all counsel of record.

/s/ *Eugene Y. Turin*