UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMILEY SCHOONOVER, Individually and on behalf of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>IOVATE HEALTH SCIENCES U.S.A. INC., a Delaware corporation,<br><br>Defendant. | Case No. 2:20-cv-01487-FLA (AGRx)<br><br>**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR CLASS CERTIFICATION [DKT. 79]** |

# RULING

Before the court is Plaintiff Emiley Schoonover's ("Plaintiff") Motion for Class Certification ("Motion"). Dkt. 79 ("Mot.").[1] Defendant Iovate Health Sciences U.S.A. Inc. ("Defendant") opposes the Motion. Dkt. 92 ("Opp'n"). Plaintiff filed a Reply. Dkt. 94 ("Reply"). On February 11, 2022, the court took the Motion under submission, finding it appropriate for decision without oral argument. Dkt. 95; *see* Fed. R. Civ. P. 78(b); Local Rule 7-15.

For the reasons set forth below, the court GRANTS IN PART Plaintiff's Motion for Class Certification.

# BACKGROUND

Plaintiff brings a putative class action alleging Defendant sells its powdered nutritional supplement products Six Star Pro Nutrition Pre-Workout Explosion ("Explosion") and Pre-Workout Explosion Ripped ("Ripped") (collectively, the "Products") in packaging that is deceptive because it includes non-functional slack-fill.[2] Dkt. 1 ("Compl.").

Plaintiff alleges the Products are packaged in opaque plastic containers that are filled only about one-third with supplement powder, leaving the remaining two-thirds of the containers empty. *Id.* ¶¶ 3, 17, 18. Plaintiff alleges this empty space—or "slack fill"—is non-functional and serves no purpose other than to mislead consumers about how much product they are purchasing. *Id.* ¶ 23. Furthermore, Plaintiff alleges Defendant's packaging violates both state and federal laws that prohibit non-functional slack-fill. *See id.* ¶¶ 14-15, 19-24.

---

[1] The court cites documents by the page numbers added by the court's CM/ECF system, rather than any page numbers that appear natively within the documents.

[2] 21 C.F.R. § 100.100(a)(3) states, in relevant part, that "[n]onfunctional slack-fill is the empty space in a package that is filled to less than its capacity for reasons other than . . . [u]navoidable product settling during shipping and handling." *See also* Cal. Bus. & Prof. Code § 12606.2(c)(3) (same in all material respects).

Based on these allegations, Plaintiff asserts claims under: (1) California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, et seq., "UCL");[3] (2) California's Consumer Legal Remedies Act (Cal. Civ. Code § 1750, et seq., "CLRA"); (3) California's Fair Advertising Law (Cal. Bus. & Prof. Code § 17500, et seq., "FAL"); and (4) unjust enrichment. *See generally* Compl. Plaintiff brings these claims on behalf of herself and a proposed class of similar purchasers.[4] *Id*. ¶¶ 65, 82, 99, 110.

The court previously denied Defendant's Motion to Dismiss or Transfer. Dkt. 25.

## DISCUSSION

Plaintiff now seeks to certify the following class: "All persons who, on or after February 13, 2017, purchased in the state of California for household use and not for resale or distribution Defendant's Six Star Pre-Workout Explosion and Defendant's Six Star Pre-Workout Explosion Ripped products in a 32 ounce or 20 ounce container." Mot. at 3. Plaintiff also requests the court appoint McGuire Law, P.C. as Class Counsel. *Id.*

**I.   Legal Standard**

Federal Rule of Civil Procedure 23 ("Rule 23") governs class actions, which are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979); Fed. R. Civ. P. 23. District courts have broad discretion to determine whether a class should be certified. *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513 (9th Cir. 2013).

---

[3] Although the Complaint refers broadly to violations of "other materially identical consumer fraud statutes enacted by states throughout the country," Plaintiff does not specify any other state statutes besides the California UCL. *See id*. ¶¶ 63-80.

[4] In the Complaint, Plaintiff proposed a nationwide class and two California subclasses. *Id*. ¶ 49. However, in the underlying Motion, Plaintiff seeks to certify only one class limited to purchasers in the state of California. Mot. at 3, 10.

3

1 However, "Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores,*
2 *Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  A moving party must "affirmatively
3 demonstrate his compliance with the Rule—that is, he must be prepared to prove that
4 there are *in fact* sufficiently numerous parties, common questions of law or fact, etc."
5 *Id.* (emphasis in original).

6      A party seeking class certification must meet the four pre-requisites under Rule
7 23(a).  *Ellis v. Costco Wholesale Corp.*, 657 F. 3d 970, 979 (9th Cir. 2011); Fed. R.
8 Civ. P. 23(a).  Rule 23(a) permits a class action to proceed only if: "(1) the class is so
9 numerous that joinder of all members is impracticable; (2) there are questions of law
10 or fact common to the class; (3) the claims or defenses of the representative parties are
11 typical of the claims or defenses of the class; and (4) the representative parties will
12 fairly and adequately protect the interests of the class."

13      Next, the moving party must also satisfy at least one of the three prongs under
14 Rule 23(b).  Fed. R. Civ. P. 23(b)(1)-(3).  In this case, Plaintiff seeks certification of
15 the class under Rule 23(b)(3).  Rule 23(b)(3) allows certification when the court finds
16 that (1) questions of law or fact common to the members of the class predominate
17 over any questions affecting only individual members, and (2) a class action is
18 superior to other available methods for the fair and efficient adjudication of the
19 controversy.

20 **II. Analysis**
21     **A. Class Definition**
22      First, Defendant argues the Motion should be denied because Plaintiff attempts
23 to expand the proposed class definition to include a 20-ounce container—a size that
24 was not referenced in the operative Complaint.  Opp'n at 10-11.  In the Complaint,
25 Plaintiff previously defined the class as "[a]ll persons who, within the applicable
26 statute of limitations, purchased Defendant's Product in the United States."  Compl.
27 ¶ 49(i).  Plaintiff, however, contends the court may consider the revised definition
28 because it is narrower than the proposed class in the Complaint.  Reply at 6.

4

Courts in this district have reached different conclusions as to whether a revised class definition may be considered on a motion for class certification. *Compare Andrews v. Plains All Am. Pipeline, L.P.*, Case No. 2:15-cv-04113-PSG (JEMx), 2019 WL 6647928, at *7 (C.D. Cal. Nov. 22, 2019) (considering class definition in motion for certification where amended "definition was narrower than and encompassed within the complaint's broader definition"), *with Costelo v. Chertoff*, 258 F.R.D. 600, 604-05 (C.D. Cal. 2009) ("The Court is bound to class definitions provided in the complaint and, absent an amended complaint, will not consider certification beyond it.").

Even if the court were to consider the revised definition including the 20-ounce container without an amended complaint, the court agrees with Defendant that here, the revision is inappropriate as it attempts to expand the class rather than narrow it. While Plaintiff's Complaint broadly defines the class as "[a]ll persons who . . . purchased Defendant's Product," the allegations in the Complaint relate *solely* to Defendant's Products in the 32-ounce container. *See* Compl. ¶¶ 17-18 (embedding images and specifying dimensions of the 32-ounce container). Thus, the court finds Plaintiff's revised proposed class—including purchasers of Defendant's Products in the 20-ounce container—is not narrower and is not encompassed by the proposed class in the Complaint.

For purposes of class certification, the court considers only Defendant's Products in the 32-ounce container. The court, therefore, declines to address the parties' remaining arguments regarding class certification of consumers purchasing Defendant's Products in the 20-ounce container.

**B.    Numerosity**

Rule 23(a)(1) requires a class be "so numerous that joinder of all members is impracticable." Although there is no "magic number" that satisfies the numerosity requirement, courts generally find this requirement met when the class size exceeds forty members. *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010).

5

The parties agree the proposed class is sufficiently numerous here. Mot. at 17-18; Opp'n at 9, n. 1. Having reviewed the evidence submitted in connection with the Motion, the court finds Plaintiff has satisfied the numerosity requirement. Dkt. 79-1 ("Turin Decl. 1") ¶ 16.

### C. Commonality

Rule 23(a)(2) is satisfied if "there are questions of law or fact common to the class." The moving party must "demonstrate that the class members 'have suffered the same injury.'" *Dukes*, 564 U.S. at 350. Importantly, "[t]his does not mean merely that they have all suffered a violation of the same provision of law." *Id.* Instead, the moving party must show that class members' "claims . . . depend upon a common contention . . . [such] that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* The commonality requirement is construed liberally, and the existence of some common legal and factual issue is sufficient. *In re ConAgra Foods*, 90 F. Supp. 3d 919, 972 (C.D. Cal. 2015), *aff'd sub nom. Briseno v. ConAgra Foods, Inc.*, 674 F. App'x 654 (9th Cir. 2017), and *aff'd sub nom. Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017).

Plaintiff argues commonality is satisfied because the action turns on whether Defendant's Products contained excessive non-functional slack-fill such that the packaging was unfair, deceptive, and/or misleading to a reasonable consumer. Mot. at 18-19. The court agrees. Plaintiff has demonstrated that the class members— who each purchased one or more of the Products with non-functional slack-fill—"have suffered the same injury" regardless of in-store or online purchase. *See Dukes*, 564 U.S. at 350.

///
///
///

### D. Predominance[5]

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997). While similar to the commonality requirement of Rule 23(a)(2), the predominance requirement of Rule 23(b)(3) is "far more demanding" and requires "a heightened showing that facts and issues common to the class predominate over any individual issues that may be present." *Id.* at 623; *Clevenger v. Welch Foods Inc.*, 342 F.R.D. 446, 457 (C.D. Cal. 2022).

"Common issues predominate over individual issues when the common issues 'represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication.'" *Edwards v. First Am. Corp.*, 798 F.3d 1172, 1182 (9th Cir. 2015). It "does not require a plaintiff seeking class certification to prove that each element of her claim is susceptible to class-wide proof." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013) (quotation marks omitted).

Like commonality, Plaintiff argues predominance is satisfied because this action turns on whether Defendant's Products contained excessive nonfunctional slack fill such that the packaging was unfair, deceptive, and/or misleading to a reasonable consumer. Mot. at 18-19, 26-27. Plaintiff argues her UCL, CLRA, and FAL claims are judged by an objective reasonable person standard, obviating the need for showings of individual reliance. *Id.* at 26. Further, Plaintiff argues her unjust enrichment claim derives from the same deceptive conduct at the core of the UCL, FAL, and CLRA claims, and is appropriate for class treatment as well. *Id.* at 19, 30-31. Lastly, Plaintiff argues she presents a likely method for determining class

---

[5] For clarity and efficiency, the court addresses predominance prior to the remaining Rule 23 considerations.

1   damages that ties the damages requested to her theory of liability.[6]  Mot. at 29-30.

2         Defendant contends Plaintiff cannot establish predominance because of the differences between in-store and online purchasers within the proposed class, and because online transactions fall within the safe harbor provision of Cal. Bus. & Prof. Code § 12606.2(c)(8)—providing there is no non-functional slack-fill where "[t]he mode of commerce does not allow the consumer to view or handle the physical container or product."  Opp'n at 17-18.

      Plaintiff responds that the UCL claim asserted in this action is premised on both federal and state law, and that the federal violation under 21 C.F.R. § 100.10 does not have a similar provision regarding "mode of commerce."  Reply at 9-11.  Therefore, Plaintiff asserts even if the safe harbor is applicable, the UCL claim premised on 21 C.F.R. § 100.10 remains viable for both in-store and online purchasers.  *Id.* Additionally, Plaintiff cites *Stewart v. Kodiak Cakes, LLC*, where a district court held that because Cal. Bus. & Prof. Code § 12606.2 "provides that it is to be interpreted consistently with federal law" and "21 C.F.R. § 100.10 do[es] not contain the 'mode of commerce' requirement . . . by the terms of § 12606.2(f), the mode of commerce is 'not operative.'"  537 F. Supp. 3d 1103, 1155 (S.D. Cal. 2021).  Although *Stewart* lends support to Plaintiff's allegation that Defendant's conduct is not protected by the safe harbor provision of Cal. Bus. & Prof. Code § 12606.2, the ruling was issued in connection with a motion to dismiss, not a motion for class certification.  The *Stewart*

---

[6] Defendant does not contest the validity of Plaintiff's damages model.  At this time, the court is satisfied Plaintiff provides a viable theory for calculating damages. Plaintiff's expert established a baseline of consumers willing to pay the full retail price for Defendant's Products before opening the container.  Dkt. 79-7 at 8-9. Plaintiff's expert then ascertained what consumers would be willing to pay after they opened the container and saw the amount of product therein, as well as the rationale for the price stated.  *Id.* at 9-11.  This is consistent with Plaintiff's theory of liability asserted.  *See Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013) ("[A]t the class-certification stage (as at trial), any model supporting a 'plaintiff's damages case must be consistent with its liability case . . .").

8

court, therefore, court did not consider the issue of commonality between online and instore purchasers.

Without determining the applicability of the Cal. Bus. & Prof. Code § 12606.2(c)(8) safe harbor, the court agrees with Defendant that the different methods of purchase involve significant dissimilarities preventing a cohesive class. While in-store consumers—like Plaintiff—may physically hold and examine a container, online consumers are only presented with an image. Likewise, online consumers do not have any guidance regarding container size and cannot compare the containers to those of competitors on store shelves. Whether members of the public are likely to be deceived, therefore, diverges at the method of purchase.

For purposes of class certification, the court exercises its discretion to limit the class and remaining considerations to in-store purchasers. *See* Reply at 11 n. 3. With this limitation, Plaintiff has identified common questions to the class that predominate over individual concerns for in-store purchasers. For class certification of claims under the UCL, FAL, or CLRA "it is necessary only to show that members of the public are likely to be deceived." *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009) (quotation marks omitted); *see also Bradach v. Pharmavite, LLC*, 735 Fed. Appx. 251, 254-55 (9th Cir. 2018) ("[T]he standard in actions under both the CLRA and UCL is whether 'members of the public are likely to be deceived.'"). These claims are "ideal for class certification because they will not require the court to investigate class members' individual interaction with the product." *Bradach*, 735 F. App'x at 254-55. Here, all in-store purchasers of Defendant's 32-ounce product were presented with the same over-sized opaque containers that could be physically held, examined, and compared to other products on retailer shelves. Whether the packaging is deceptive to in-store purchasers is, thus, one objective, class-wide inquiry.

Additionally, under California law, unjust enrichment is not "a theory of recovery, but an effect: the result of a failure to make restitution under circumstances where it is equitable to do so." *Lauriedale Assocs., Ltd. v. Wilson*, 7 Cal. App. 4th

9

1439, 1448 (1992). Here, Plaintiff asserts Defendant unjustly retained benefits and proceeds after consumers were deceived into paying a "price premium" based on the misleading size of the Products' containers. Mot. at 30-31. Thus, for the reasons set forth above, common issues of fact also predominate as to Plaintiff's unjust enrichment claim. *See Salas v. Toyota Motor Sales, U.S.A., Inc.*, Case No. 2:15-cv-08629-FMO (Ex), 2019 WL 1940619, at *11 (C.D. Cal. Mar. 27, 2019).

In sum, the court finds that Plaintiff has satisfied predominance with respect to consumers who purchased the 32-ounce Products in-store.

### E. Typicality

Rule 23(a)(3) requires "the claims or defenses of the representative parties" to be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The test of typicality is 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Castillo v. Bank of Am., NA*, 980 F.3d 723, 729 (9th Cir. 2020) (quotation marks omitted). "[C]lass certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Hanon*, 976 F.2d at 508 (quotation marks omitted).

Plaintiff argues her claim is typical of the class because all putative class members were exposed to the same common deceptive practice—Plaintiff, like other unnamed class members, (1) relied on Defendant's packaging to discern the amount of product within, and (2) seeks the same damages, a refund of the purchase price. Mot. at 20-21.

Defendant contends Plaintiff cannot satisfy the typicality requirement because her claims are subject to a unique defense. Opp'n at 11-13. Specifically, Defendant

asserts Plaintiff cannot satisfy the reasonable consumer test because she read the label of the Ripped product she purchased, which described the approximate number of servings per container and the serving size. *Id.* Additionally, Defendant argues Plaintiff's claims are not co-extensive with those of the class because she purchased only the Ripped product in one flavor, and the total weight of the Ripped products varies by flavor and serving size. Opp'n 14-16. The court disagrees and addresses each argument in turn.

Despite reviewing the Ripped product label, Plaintiff described relying on the size of the container in deciding to purchase the product. Dkt. 79-8 ("Schoonover Dep.") at 61:3-18; 64:14-17.[7] This is consistent with a reasonable consumer and prospective class member who, like Plaintiff, similarly relied on Defendant's product packaging regardless of the labeling. Moreover, Defendant does not cite any authority supporting its argument that Plaintiff's review of the label prevents a showing of typicality in class certification. Instead, Defendant's cited cases were in connection with motions to dismiss and address whether a label containing accurate net weight of product precludes UCL, FAL, CLRA, or similar claims based on deceptive packaging. *See* Opp'n 12 n. 7. The court previously addressed and disposed of this issue in its Order denying Defendant's Motion to Dismiss, finding Plaintiff "adequately alleged that a reasonable consumer is likely to be misled by the Product's packaging despite the packaging accurately stating the weight of its contents." Dkt. 25; *see Padilla v. Whitewave Foods Co.*, Case No. 2:18-cv-09327-SB (JCx), 2019 WL 4640399, at *11 ("Although the packaging lists the weight and approximate number of servings in each container, the containers' size may provide consumers with a more salient means by which to assess the quantity of product they are purchasing and its value."); *accord Escobar v. Just Born Inc.*, Case No. 2:17-cv-01826-TJH (PJWx), 2017 WL 5125740,

---

[7] For the purposes of this exhibit, the court cites to the page numbers that appear natively within the document.

at *9 (C.D. Cal. June 12, 2017) ("[A] reasonable consumer is not necessarily aware of . . . how [the product's] weight of volume correlates to the product's size.").

Nor does Plaintiff's purchase of one Ripped flavor and serving size affect typicality. The differences in weight and volume by product flavor appear to be slight. For example, 30 servings of the Ripped watermelon flavored product weighs 168 grams (approximately 5.91 ounces, occupying 18.4% of the 32-ounce container), while 30 servings of the Ripped peach mango flavored product weighs 173 grams (approximately 6.10 ounces, occupying 19.1% of the 32-ounce container).[8] *See* Opp'n at 15. The difference in weight and volume attributable to these flavors is less than 1% and is likely not discernable to the average, reasonable consumer. The differences between the various serving size offerings are similarly minimal. For example, 40 servings of the Ripped watermelon or peach mango flavored products weigh 224 grams (7.91 ounces, occupying 24.7% of the 32-ounce container), and occupy only 6.3% or 5.6%, respectively, more volume than 30 servings of the same flavored products. *See id.*

Therefore, the court finds Plaintiff's claims are "reasonably co-extensive" with class members who similarly relied on Defendant's product packaging, suffered the same injury, and seek the same refund of purchase price. *See Castillo*, 980 F.3d at 729. In sum, Plaintiff has sufficiently demonstrated her claims are typical of the claims of the proposed class members.

### F. Adequacy

Finally, a moving party seeking class certification must show that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class

---

[8] The court calculated the fill level by dividing the total ounces of flavored product by the volume of the container (32-ounces).

1 members and (2) will the named plaintiffs and their counsel prosecute the action
2 vigorously on behalf of the class?" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020
3 (9th Cir. 1998).

4       Defendant argues Plaintiff and her counsel cannot satisfy the adequacy
5 requirement because: (1) Plaintiff's financial interest is dwarfed by the potential
6 recovery of attorney's fees by her counsel; (2) Plaintiff's alleged friendship with her
7 counsel; (3) Plaintiff's abandonment of a nationwide class; (4) Plaintiff's
8 manufacturing of the instant action; (5) Plaintiff's unfamiliarity with the facts
9 underlying the action; (6) Plaintiff's citation to the wrong statute in the Complaint; (7)
10 Plaintiff's failure to move timely for class certification; and (8) Plaintiff's counsel's
11 lack of significant experience. Opp'n at 21-33. The court addresses these arguments
12 in turn.

13       First, the court is not persuaded by Defendant's argument that Plaintiff is an
14 inadequate representative because she does not have a significant financial interest in
15 the litigation. If Defendant's argument were to prevail, no class action involving low-
16 cost goods would ever proceed. Moreover, as Defendant's cited authority implicitly
17 acknowledges, a class representative's minor financial stake in litigation does not
18 preclude a finding of adequacy; instead, it necessitates a more cautious examination of
19 such a plaintiff. *See London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1254 (11th Cir.
20 2003) ("The requirement for a stringent examination of the adequacy of the class
21 representative is especially great when, as in this case, the attorney's fee will 'far
22 exceed[ ]' the class representative's recovery . . . In such circumstances, 'the fear is
23 that a class representative who is closely associated with the class attorney [will]
24 allow settlement on terms less favorable to the interests of absent class members.'"
25 (citation omitted)).
26 / / /
27 / / /
28 / / /

Second, the court is not persuaded by Defendant's argument that Plaintiff's alleged friendship with her counsel[9] presents a conflict of interest. As Plaintiff adequately points out, Plaintiff did not have any contact with her lead counsel, Eugene Turin, prior to commencement of the present action. Reply at 16-17; Dkt. 94-2 ("Schoonover Dep. 2"), 150:13-25; 154:3-24. The "existence of a friendship between [Plaintiff] and attorney [Jordan Frysinger], on its own, does not render Plaintiff[ ] an inadequate class representative[ ]." *Clevenger*, 342 F.R.D. at 457. Additionally, Mr. Frysinger is not the only attorney of record for Plaintiff—he is joined by Mr. Turin and Timothy P. Kingsbury, who have no personal connection to Plaintiff. *See id*.

Third, it is not rare for class definitions to change between the filing of the original complaint and class certification. Class members that are excluded on a narrowing of the class definition are not prejudiced because, under "*American Pipe*[,] the timely filing of a class action tolls the applicable statute of limitations for all persons encompassed by the class complaint." *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1804 (2018). Thus, contrary to Defendant's assertion, nationwide consumers excluded from the class will not be barred from commencing individual actions against Defendant. *See id*; Opp'n at 25-26.

Fourth, Defendant's argument that Plaintiff's claim is manufactured is unsupported. Plaintiff testified that the decision to purchase Defendant's Products was her own. Schoonover Dep. 2 at 74:21-75:14. The fact that Plaintiff was not aware of the Ripped product prior to purchasing and did not complain to Walgreens or to Defendant regarding her purchase, does not render the lawsuit manufactured.

Fifth, Plaintiff is sufficiently familiar with the suit. The Ninth Circuit requires only that a representative "understand[ ] [her] duties and [be] willing and able to perform them." *See Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las*

---

[9] Plaintiff and Jordan Frysinger attended the University of Idaho together. Schoonover Dep. 2 at 151:1-8. It is unclear how close the friendship is.

*Vegas Sands, Inc.*, 244 F. 3d 1152, 1162 (9th Cir. 2011). A complete understanding of the action is not required; rather, a class representative need only have general familiarity. *See Copeland v. MCI Commc'ns Servs., Inc.*, Case No. 2:07-cv-04865-JHN (JCx), 2008 WL 11334494, at *6 (C.D. Cal. Oct. 23, 2008). Plaintiff understands she is seeking relief on behalf of a class and knows the main issue is whether Defendant's Products are deceptively packaged. Schoonover Dep. 2 at 127:24-131:11; 192:5-14.

Finally, Defendant's various assertions do not render Plaintiff's counsel inadequate. Despite Plaintiff's counsel's citation to Cal. Bus. & Prof. Code § 12606 instead of § 12606.2, Defendant is aware of the applicable section and does not claim any prejudice resulting from counsel's citation to the wrong statute. Opp'n at 28; *see generally* Dkt. 15 (Defendant's Motion to Dismiss). Next, Defendants raise the timing of Plaintiff's underlying Motion; yet as Plaintiff states, the court previously denied Defendant's Ex Parte Application to Strike Plaintiff's Motion for Class Certification. *See* Dkt. 85. Moreover, Plaintiff's counsel attests that McGuire Law, P.C. has been appointed class counsel in numerous consumer class actions in both state and federal courts. Turin Decl. 1 ¶ 18. Likewise, Mr. Turin has personally been appointed class counsel in other cases. Dkts. 94-1 ("Turin Decl. 2") ¶¶ 5-12; 94-4 to 94-11. Based on the declarations by Plaintiff's counsel, the court finds counsel well suited for appointment in light of all the evidence. *See* Turin Decl. 1 ¶¶ 17-20; Turin Decl. 2 ¶¶ 5-12; Fed. R. Civ. P. 23(g)[10].

///

///

---

[10] In appointing class counsel, the court must consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

**G. Superiority**

In addition to satisfying all four requirements of Rule 23(a) and the predominance requirement of Rule 23(b)(3), a party seeking class certification must demonstrate "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The matters pertinent to this analysis include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

*Id*.

First, the class members' interests in individually controlling the prosecution of separate actions are minimal. The damages suffered by each is not large, as the Products at issue cost approximately $15.99. Even if each class member was issued a full refund rather than the price premium paid, the potential recovery would still be modest. This weighs in favor of certifying the class. *See id.*; *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001) ("Where damages suffered by each putative class member are not large, this factor weighs in favor of certifying a class action.")

Second, regarding the extent and nature of other litigation involving the same controversy, Plaintiff represents and Defendant does not dispute that there is currently no other ongoing litigation regarding deceptive packaging and slack-fill for Defendant's Products. Mot. at 32; *see generally* Opp'n. Accordingly, the court finds a class action would not lead to inconsistent results or waste of judicial resources.

Third, regarding the desirability of this forum, Plaintiff argues this is an appropriate forum because Plaintiff seeks to certify a class of California purchasers,

16

making this a desirable forum for the class. Mot. at 32. Defendant does not dispute the appropriateness of this forum. *See generally* Opp'n. The court, therefore, finds this factor favors certification.

Finally, the court does not find that any difficulties—such as identifying class members—weighs against certification. Defendant argues, without citing any authority in support, that this poses a significant hurdle because information may not be readily available from third-party retailers selling Defendant's Products. Opp'n at 20-21. However, the fact that consumers may be required to self-identify is not an issue that must be resolved at the class certification stage. *See Briseno*, 844 F.3d at 1131-32. In fact, in *Briseno*, the Ninth Circuit made clear that this exact analysis of administrative feasibility—often referred to as ascertainability—is not a prerequisite to certification. *Id.* at 1133 ("Rule 23 neither provides nor implies that demonstrating an administratively feasible way to identify class members is a prerequisite to class certification . . . [w]e therefore join the Sixth, Seventh, and Eighth Circuits in declining to adopt [the] requirement.").

## **CONCLUSION**

For the above reasons, the court GRANTS IN PART Plaintiff's Motion for Class Certification and CERTIFIES the following class: All persons who, on or after February 13, 2017, purchased in-store in the state of California for household use and not for resale or distribution, Defendant's Six Star Pre-Workout Explosion and/or Defendant's Six Star Pre-Workout Explosion Ripped products in a 32-ounce container. The Motion is DENIED as to Defendant's 20-ounce containers and online purchases.

/ / /

/ / /

/ / /

The court appoints McGuire Law, P.C to serve as Class Counsel and appoints Plaintiff as Class Representative. Defendant's Request for Judicial Notice, Dkt. 92-5, is DENIED AS MOOT.

IT IS SO ORDERED.

Dated: August 21, 2023

_____
FERNANDO L. AENLLE-ROCHA
United States District Judge